756 So.2d 1196 (2000)
Christy Dyan Lowe MASTERS, Plaintiff-Appellant,
v.
Jimmy Dwayne MASTERS, Defendant-Appellee.
No. 33,438-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2000.
*1197 Bobby L. Culpepper, Jonesboro, Jeffrey Lee DeMent, West Monroe, Counsel for Appellant.
Paul Henry Kidd, Jr., Monroe, Counsel for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
WILLIAMS, Judge.
The plaintiff, Christy Dyan Lowe Masters, appeals the trial court's judgment which modified a prior custody decree and designated the defendant, Jimmy Dwayne Masters, as primary domiciliary custodian of the parties' minor child. For the following reasons, we reverse the trial court's ruling.

FACTS AND PROCEDURAL HISTORY
Christy Dyan Lowe Masters ("Christy") and Jimmy Dwayne Masters ("Dwayne") were married on October 26, 1992. The parties divorced on October 1, 1996. One child, Tiffany Cheyenne Masters ("Cheyenne"), was born of the marriage on February 7, 1995. By virtue of a consent decree, the parties were granted joint custody. Christy was designated primary domiciliary custodian of Cheyenne and Dwayne was awarded visitation on alternating weekends and "six weeks during the summer months of June, July and August, beginning on June 1, 1997." Dwayne was ordered to pay $344.00 per month in child support to be reduced by one-half during his summer visitations. The parties also agreed that Dwayne would maintain health insurance for the child and that they would each pay one-half of the expenses not covered under the insurance plan.
On January 22, 1997, Dwayne filed a rule for modification of the child support and custody decree. He requested a modification in the child support on the grounds that his employer went out of business and, after a period of being unemployed, he was forced to accept a new job at a lower rate of pay. He also alleged that the plaintiff changed employment and was now receiving a higher income than she was receiving at the time that the custody judgment was issued. Dwayne also requested additional visitation time, and that his mother be allowed to provide daycare for the child to alleviate any daycare expenses. On February 11, 1997, Christy filed a reconventional demand seeking sole custody of Cheyenne. She alleged that: (1) Dwayne does not use a car seat for Cheyenne; (2) Cheyenne sleeps in the same bed as the defendant and his wife during her visitations; (3) Dwayne was convicted of driving while intoxicated ("DWI") in November, 1996; and (4) Dwayne drinks and drives while Cheyenne is in the vehicle with him.
In their consent decree, the parties agreed that each shall give the other party *1198 sixty days notice before moving out of the state in order to give the other party an opportunity to return to court and seek a change in the custody plan. As a result, Christy sent a letter to Dwayne dated May 27, 1998 informing him of her proposed relocation to Atlanta, Georgia with Cheyenne and her husband, Craig Barkley. Christy explained that her husband's employer was relocating from Swartz, Louisiana to Atlanta, Georgia and that the date of their intended move was August 1, 1998. In a separate correspondence, the plaintiff forwarded an itinerary of her family's proposed summer vacations, which included a family vacation from June 12-18, 1998.
On June 5, 1998, Dwayne received Cheyenne for what Christy intended to be a weekend visitation. However, the following Sunday, Dwayne failed to return Cheyenne to her mother. According to the Dwayne, he telephoned Christy prior to June 1, 1998 and informed her that he intended to keep Cheyenne for six consecutive weeks[1] beginning June 1, 1998. On June 17, 1998, Christy located Cheyenne at the paternal grandparents' home and took the child.
Thereafter, Dwayne amended his pleadings to request sole custody of Cheyenne. He asserted that, by withholding the child until June 5, 1998 and by removing the child from his parents' home on June 17, 1998, Christy was in direct contravention of the custody decree and should be held in contempt of court. Dwayne requested an injunction prohibiting Christy from removing Cheyenne from Ouachita Parish. He also requested that the hearing on these matters, which was scheduled for August 10, 1998, be re-fixed to a date prior to the proposed relocation of the parties' minor child.
On May 21, 1999, after a hearing, the trial court modified the custody decree. Dwayne Masters was designated primary domiciliary custodian and Christy Masters was awarded specified custody/visitations. The trial court also ordered the plaintiff to pay $60.00 per month in child support. The trial court denied the plaintiff's request to permanently remove and relocate the minor child from the state. The plaintiff appeals urging four assignments of error. The defendant answers the appeal urging that the amount fixed for child support is inadequate.

DISCUSSION

Assignments of Error Nos. 1 & 2
By these assignments, the plaintiff asserts that the trial court erred by modifying the existing custody decree, designating Dwayne Masters as the primary domiciliary custodian, and by failing to afford the plaintiff the option of staying in Ouachita Parish and retaining custody of the minor child.
The paramount consideration in any determination of child custody is the best interest of the child. LSA-C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Oglesby v. Oglesby, 25,974 (La.App.2d Cir.8/17/94), 641 So.2d 1027. In cases such as this one, where the original custody decree is a stipulated judgment and the rule of Bergeron v. Bergeron,[2] 492 So.2d 1193 (La.1986), is inapplicable, the party seeking *1199 modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Evans v. Lungrin, supra.
It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record. Evans v. Lungrin, supra. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Evans v. Lungrin, supra.
As stated above, the party seeking a modification of a stipulated judgment of custody has the burden of proving a "material change of circumstances." In the instant case, both parties requested a modification of the existing custody agreement, in which the parties were awarded joint custody with the plaintiff designated primary domiciliary custodian.
Dwayne filed his request for modification of the custody decree on January 22, 1997 requesting additional visitation time with the child. Thereafter, he amended his pleading to request sole custody of the parties' minor child. He alleged that "circumstances have substantially changed since the issuance of the original custody decree" which would allow him to provide a stable and loving environment for the child. However, he did not elaborate on or specify any particular change in circumstance. He also asserted that the proposed relocation of Cheyenne would not be in her best interest because most of her family and social contacts are in Ouachita Parish. In further support of his request for modification of the custody decree, Dwayne alleged that Christy continues to violate the existing custody decree, particularly, he outlined an incident that occurred in 1998 when he received the child four days after the date that he believed his visitation was to begin, and the plaintiff later took the child from the paternal grandparents' home without his knowledge.
In reference to the incidents surrounding the summer visitation in 1998, the record reflects that both parties were guilty of abusing the ambiguous provisions regarding summer visitation and not conducting the visitation in an orderly manner as they had done previously. Although the section of the custody decree regarding the manner in which the defendant's six weeks of summer visitation would be divided was unclear, prior to the 1998 incident, the defendant exercised three, two-week visits with the child during the summer.
On this issue, the trial judge stated that he was "concerned about the fact that there was a six-week period that the husband was supposed to have the child and the fact that she removed the child during that period of time." However, he concluded *1200 that the parties should specify when the six-week period is to begin so that "there won't be any confusion in the future about that."
The record reflects that the parties never established exactly how Dwayne's summer visitation would be conducted. Nevertheless, as previously stated, the parties placed a reasonable interpretation on the provision and divided the time into three, two-week visitations. Therefore, the trial judge's interpretation of the summer visitation was inaccurate. Based on the facts set forth in the record, the plaintiff was justified in believing that her weekend visitation rights had been abused and that the defendant's two-week visitation in June had expired. However, she did not act prudently in removing the child from the paternal grandparents' home.
The defendant's allegation that a change in custody was in order was also based on Christy's proposed relocation to Atlanta that was to occur on August 1, 1998. At the time of trial, April 1999, Christy had not relocated to Atlanta. Therefore, the primary issue in this case should have been whether reasons, other than the proposed relocation, existed for the modification of the custody decree. However, the record reflects that the trial court's ruling modifying the custody decree was based on the proposed relocation of the child. The trial judge noted that because Cheyenne has family and friends in Ouachita Parish, relocating her to Atlanta would have an adverse effect, therefore, it would be in the child's best interest to remain in Ouachita Parish. As a result, the trial court denied Christy's request to relocate the child to Atlanta and designated Dwayne primary domiciliary custodian.
LSA-R.S. 9:355.11 provides in pertinent part: "Providing notice of a proposed relocation of a child shall not constitute a change of circumstances warranting a change of custody." Only an actual move out of state is a "material change in circumstances" which allows the court to revisit custody and re-measure the best interest of the child[3]. See also, Evans v. Lungrin, supra. Therefore, the trial court erred in modifying the existing custody decree and in not affording the plaintiff the opportunity to remain in Ouachita Parish and retain custody of the child.
The plaintiff's request for sole custody was based on allegations concerning the defendant's behavior, including two convictions for DWI. The defendant's convictions for DWI occurred in 1993 and 1996, both prior to the original custody decree. Christy alleged that the defendant drinks while Cheyenne is in the vehicle riding with him, and he fails to use a car seat for her. She also alleged that Cheyenne sleeps in the bed with the defendant and his wife during visits. The record does not reflect if or when this conduct took place, thus we cannot determine whether the alleged conduct should have been considered a material change of circumstances since the original custody decree.
Neither party successfully established a "material change of circumstances" sufficient to allow the court to reopen the custody issue for possible modification by reconsideration of the best interest of the child. Therefore, we find that the trial court erred in modifying the existing custody decree. Because we are required to reinstate the original custody decree, we pretermit a discussion of the remaining assignments of error.[4]

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and set aside *1201 and the original custody decree is reinstated. The costs of this appeal are assessed to the defendant, Dwayne Masters.
REVERSED; ORIGINAL CUSTODY DECREE REINSTATED.
NOTES
[1] Pursuant to the custody agreement, the defendant was awarded visitation for six weeks during the summer months of June, July and August. However, it was never indicated how the time would be divided. Nevertheless, the parties interpreted the provision to mean that the child would spend three two-week visitations with her father throughout the summer, which was how the visitation was conducted in 1997.
[2] Under the standard set forth in Bergeron, the party seeking to modify the decree bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that any harm likely to be cause by a change of environment is substantially outweighed by the advantages to the child.
[3] Since Christy has not assigned as error the trial court's decision to deny her request to relocate the child, we decline to rule on the correctness of that portion of the decision.
[4] Plaintiff also assigns as error the trial court's failure to follow the recommendations of the expert witnesses and its refusal to allow the plaintiff to present evidence predating the original custody judgment. The defendant assigns as error the adequacy of the amount of child support awarded.