916 So.2d 221 (2005)
Eric J. ELLIOTT
v.
Carrie Barber ELLIOTT.
No. 2005 CU 0181.
Court of Appeal of Louisiana, First Circuit.
May 11, 2005.
*223 C. Jerome D'Aquila, New Roads, for PlaintiffAppellee Eric J. Elliott.
Mark M. Lazarre, M. Therese Nagem, Kathryn Flynn Simino, Baton Rouge, for Defendant  Appellant Carrie Barber Elliott.
Before: PARRO, KUHN, and WELCH, JJ.
WELCH, J.
This is an appeal by Carrie Barber Elliott from a judgment rendered in favor of Eric J. Elliott, which denied her request to relocate the residence of their two minor children to Natchitoches, Louisiana, changed the designation of the domiciliary parent of the minor children solely to Eric Elliott, and ordered the parties to submit a joint custody plan consistent with the court's ruling. For the reasons that follow, we reverse the judgment of the trial court insofar as it designated Eric Elliott as the children's sole domiciliary parent; we vacate the joint custody implementation plan signed by the trial court pursuant to that judgment; and we reinstate the parties' previous stipulated judgment (custody decree).[1]

FACTUAL AND PROCEDURAL HISTORY
The parties in this matter, Eric Elliott and Carrie Elliott, were married to one another on May 13, 1995, and had two children during their marriage. The parties separated, and on April 10, 2001, a petition for divorce was filed. A judgment of divorce was subsequently signed on January 10, 2003. During the pendency of the divorce proceedings, the parties entered into a stipulated judgment on December 12, 2001, which judgment was signed on January 16, 2002.[2] This stipulated judgment awarded the parties joint custody of *224 the two minor children, with the parties designated as co-domiciliary custodial parents, subject to specific, regular custodial periods to be exercised by each of the parties, with slight modifications of the custodial periods for holidays, birthdays, and summer vacations. The judgment also provided that, in the event there were any disagreements between the parties on major decisions concerning the children, the matter would be set for hearing and submitted to the court for a decision.
On June 11 and 17, 2003, Eric Elliott received letters from Carrie Elliott informing him that she intended to relocate her residence and the children's residence to Tyler, Texas. Eric Elliott timely objected to the proposed relocation by filing a rule to modify the custody plan, objecting to the relocation, for injunctive relief, and alternatively, for the posting of security. In his rule, Eric Elliott alleged he had received notice that Carrie Elliott intended to relocate with the minor children to Tyler, Texas, and he objected to the proposed relocation of the children's residence because the notice failed to comply with the legal requirements of a notice of a proposed relocation of a child's residence, because the proposed relocation was not made in good faith, and because the proposed relocation was not in the best interest of the children. He alleged that since the proposed relocation was not made in good faith and was not in the best interest of the children, he should be awarded sole custody of the minor children, subject to reasonable visitation by Carrie Elliott.
Carrie Elliott filed an answer to the objection to the relocation of the children, alleging that she was acting in good faith, that she has always promoted the relationship between the children and Eric Elliott, and that the proposed relocation would not significantly change their relationship. She further alleged that due to the children's age, the proposed relocation would not impact the children's physical, educational, or emotional development, would enhance the general quality of life for both of the children, and was in their best interest. According to the record, a limited evidentiary hearing, in accordance with La. R.S. 9:355.10 B and C, was held on July 25, 2003, and August 8, 2003. After the presentation of Carrie Elliott's case, the trial court granted Eric Elliott's motion for involuntary dismissal under La. C.C.P. art. 1672 B and denied Carrie Elliott's request to relocate the residence of the minor children to Tyler, Texas.[3]
Thereafter, on February 4, 2004, Eric Elliott received a letter from Carrie Elliott informing him that she intended to relocate her residence and the children's residence to Natchitoches, Louisiana. Eric Elliott timely objected to the proposed relocation by filing a rule to modify the custody plan, objecting to the relocation, for injunctive relief and alternatively, for the posting the of security. In his rule, Eric Elliott alleged he had received notice that Carrie Elliott intended to relocate with the minor children to Natchitoches, Louisiana, and he objected to the proposed relocation of the children's residence because the notice failed to comply with the legal requirements of a notice of a proposed relocation of a child's residence, because the proposed relocation was not made in good faith, and because the proposed relocation was not in the best interest *225 of the children. He further alleged that since the proposed relocation was not made in good faith and was not in the best interest of the children, and considering the factors set forth in La. C.C. art. 134, he should be awarded sole custody of the minor children, subject to reasonable visitation by Carrie Elliott. Additionally, Eric Elliott alleged that he and Carrie Elliott were in disagreement as to where the oldest child would attend school. He desired for the child to attend Catholic Elementary in New Roads since the children were baptized in the Catholic faith.
Carrie Elliott filed an answer and reconventional demand to his rule requesting that she be awarded sole custody, or alternatively, that the parties be awarded joint custody and that she be designated as the children's domiciliary parent with the right to move to Natchitoches. She also requested a psychological evaluation be performed on the parties and the children for the purpose of determining custody. After an exception of no cause of action was filed by Eric Elliott, Carrie Elliott amended her reconventional demand to allege that her intended move to Natchitoches would render the present physical custodial arrangement unworkable once the move took place such that the court would need to decide, for school purposes, where the children would primarily reside. Additionally, Carrie Elliott listed several reasons why she believed the move to Natchitoches would be better for the children and the reasons why she believed she should be awarded custody or designated as the domiciliary parent of the children  particularly, that the children would do better in an environment where they had a "permanent home" and were not moved from week to week, and that the two children, who were female, had developed a closer bond and relationship with her and were entering the years of their lives when they needed her attention.
A hearing on these issues was held before a hearing officer on April 7, 2004. After considering the law and the evidence, the hearing officer recommended that the children's residence not be relocated to Natchitoches, Louisiana, and that the parties continue to share custody of the children pending further order of the court. The hearing officer further found: it was not in the children's best interest to remove them from Pointe Coupee Parish since the parties had shared custody since December 2001, and since both of their maternal and paternal grandparents resided in Pointe Coupee Parish; Carrie Elliott's request to relocate to Natchitoches was not made in good faith (because it was made less than one year from the prior request to relocate) and was not in the children's best interest (because even though Carrie Elliott alleged that she could get a higher paying job and earn her masters degree, she had the option of attending school in the area surrounding Pointe Coupee Parish without disrupting the children's lifestyle); and the allegations in the pleadings neither warranted granting the request to relocate nor the changing of custody. The hearing officer further ordered the parties to obtain a pre-trial conference date with the trial court and that Carrie Elliott's request for a psychological evaluation should be addressed at the pre-trial conference. Carrie Elliott timely filed an objection to the hearing officer's findings and recommendations and requested a de novo hearing before a judge of the district court.
Thereafter, Eric Elliott amended his objection to relocation, alleging that despite the hearing officer's recommendation, he feared Carrie Elliott would attempt to relocate with the minor children prior to the hearing, and therefore, he requested an order preventing Carrie Elliott from relocating the residence of the minor children. *226 Pursuant to his amended objection, an injunction was issued by the court prohibiting Carrie Elliott from relocating the residence of the minor children until further order of the court.
Carrie Elliott filed a second amended reconventional demand and request for temporary restraining order, wherein she listed several additional reasons why she should be named domiciliary parent of the minor children and additional reasons why a psychological evaluation should be performed with respect to the parties and the children; she requested the issue of permanent spousal support be set for hearing; she requested the court issue additional orders regarding the conduct of the parties regardless of whether custody was modified; and she requested and was granted a temporary restraining order prohibiting Eric Elliott from allowing his girlfriend to have any contact with the minor children and from allowing her to harass or physically abuse the children.
Eric Elliott then amended his prior rule to modify custody to allege that Carrie Elliott was seeking to deny him access to and to impede his relationship with his children, as evidenced by the fact that she had sought permission to relocate the children's residence twice in the last two years. Accordingly, he contended that he was entitled to sole custody of the minor children, subject to reasonable visitation by Carrie Elliott, or alternatively, he was entitled to be named domiciliary parent, subject to reasonable visitation by Carrie Elliott.
A hearing was held on July 16, 2004. After the introduction of evidence, the trial court denied Carrie Elliott's request to relocate the residence of the minor children, changed the designation of domiciliary parent from the parties being co-domiciliary parents to Eric Elliott as the domiciliary parent, and ordered a joint custody plan to be submitted in accordance with its ruling. The trial court signed a written judgment to this effect on August 27, 2004,[4] and it is from this judgment that Carrie Elliott has appealed, assigning as error the trial court's modification of the custodial arrangement of co-domiciliary status and equal physical custody.

STANDARD OF REVIEW
Every child custody case must be viewed in light of its own particular set of facts and circumstances. Major v. Major, 2002-2131 (La.App. 1st Cir.2/14/03), 849 So.2d 547, 550; Gill v. Dufrene, 97-0777 (La.App. 1st Cir.12/29/97), 706 So.2d 518, 521. The paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738; La. C.C. art. 131. Thus, the trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Major, 849 So.2d at 550.
In this case, and as in most child custody cases, the trial court's determination was based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in *227 light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993).

LAW AND ANALYSIS
There is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and of that needed to change a custody plan ordered pursuant to a non-considered decree (or stipulated judgment). Evans, 708 So.2d at 738. A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Major, 849 So.2d at 551. By contrast, a non-considered decree or uncontested decree is one in which no evidence is presented as to the fitness of the parents, such as one that is entered by default, by stipulation or consent of the parties, or is otherwise not contested. Major, 849 So.2d at 552; Barnes v. Cason, 25,808 (La.App. 2nd Cir.5/4/94), 637 So.2d 607, 611, writ denied, 94-1325 (La.9/2/94), 643 So.2d 149.
Once a considered decree of permanent custody has been rendered by a court, the proponent of the change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986). In cases where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in Bergeron is inapplicable. Major, 849 So.2d at 552. Rather, a party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child. Id.
In this case, the underlying custody decree is a stipulated judgment whereby the parties consented to a joint custody plan with the parties designated as co-domiciliary custodial parents, with each parent essentially sharing physical custody of the children. Therefore, in order to modify the custody plan, the trial court had to find that (1) a change in circumstances materially affecting the welfare of the children had occurred since the rendition of the stipulated judgment on December 12, 2001, and (2) the modification proposed by Eric Elliott (that he have sole custody of the minor children subject to reasonable visitation by Carrie Elliott, or alternatively, to have joint custody of the minor children with him designated as their sole domiciliary parent subject to reasonable visitation by Carrie Elliott) was in the best interest of the children.
The trial court found that the children were born and raised in the Pointe Coupee Parish area, that the children had their family in the Pointe Coupee Parish area, and that relocating them to Natchitoches would have an adverse effect on the children and their relationship with their father. Based on these facts, the trial court found it would be in the children's best *228 interest to remain in Pointe Coupee Parish. Accordingly, Carrie Elliott's request to relocate the children to Natchitoches was denied by the trial court.
The trial court then found that Carrie Elliott's "history" of proposing to relocate with the children, "combined with the failure to communicate" and "get along with" Eric Elliott, justified a modification of the parties custodial plan. The trial court modified the joint custody plan by designating Eric Elliott as the children's sole domiciliary parent and by reducing Carrie Elliott's periods of physical custody of the children to every other weekend. However, in the record before us, we find no evidence establishing that a change in circumstances materially affecting the welfare of the children had occurred since the rendition of the stipulated judgment on December 12, 2001.
Regarding the proposed relocations, while an actual move may constitute a "material change in circumstances" allowing the court to revisit custody and re-measure the best interest of the child,[5] La. R.S. 9:355.11 clearly states that, "[p]roviding notice of a proposed relocation of a child shall not constitute a change of circumstances warranting a change of custody." We note that on July 16, 2004, when this matter was tried, Carrie Elliot had not yet relocated to Natchitoches. In fact, her testimony indicated that her relocation to Natchitoches was contingent on the trial court's ruling with regard to the issue  if the trial court were to grant her request to relocate, she intended to move to Natchitoches with the children, but if the trial court did not approve the move, she clearly stated she would not leave without her children. Thus, the proposed relocation to Natchitoches by Carrie Elliot cannot constitute a material change of circumstances materially affecting the children's welfare.
Additionally, while "failure to communicate" and "get along with" the other parent may affect the best interest of the child, these traits do not rise to the level of a material change in circumstances sufficient to allow the court to reopen the custody issue for possible modification by reconsideration of the best interest of the child. Therefore, we find that the trial court erred in modifying the then existing custody decree.
However, assuming arguendo that a material change in circumstances had been established, we further find that the trial court erred in finding that the proposed modification was in the best interest of the children. Louisiana Civil Code article 134 enumerates twelve non-exclusive factors relevant in determining the best interest of the child, which may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

*229 (6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
While an established "history" by a parent of requesting relocations that are not made in good faith and/or are not in the best interest of the child may be considered by a court when weighing factors 4, 5, and 10, set forth above, prior to making a finding that a parent has such a "history," a court should balance a parent's legal right to request a relocation against the adverse effect that will occur if a parent is punished for exercising that legal right. Under the particular facts of this case, we find that there was insufficient evidence to establish that Carrie Elliott had such a "history." Carrie Elliott's first request to relocate to Tyler, Texas was denied when the trial court granted an involuntary dismissal at a limited evidentiary hearing. Her subsequent request to relocate to Natchitoches, Louisiana was denied at the same hearing during which the trial court modified custody.
Carrie Elliott specifically testified at that hearing that she would not relocate to Natchitoches without the children. After the trial court denied Carrie Elliott's request to relocate with the minor children, it should have afforded her the opportunity to remain in Pointe Coupee Parish and to continue to share physical custody of the children pursuant to the custody decree. See Masters v. Masters, 33,438 (La.App. 2nd Cir.4/5/00), 756 So.2d 1196, 1200, writ denied, XXXX-XXXX (La.12/7/01), 803 So.2d 975. Had Eric Elliott continued to urge that a modification of the joint custody plan was warranted, then the primary issue the trial court should have considered was, whether there were reasons, other than the proposed relocations, that existed for the modification of the custody decree. According to the record, the only other reason set forth by the trial court warranting its modification of the custody decree in favor of Eric Elliott, was Carrie Elliott's alleged inability to communicate with and "get along with" Eric Elliott. In its oral ruling, the trial court noted that other than the request to relocate to Tyler, Texas, and a minor disagreement over some miscellaneous community movables, Carrie Elliott and Eric Elliott have always come "to some type of agreement between them." However, the trial court then determined that, "this young couple has not gotten along at all, period.... They don't  they can't agree on a thing.... They don't like each other. They don't agree on anything.... It's a history fraught with problems of communication."
In using the inability of the parties to communicate as a reason to justify a modification of custody, the trial court found that this inability to communicate was attributable solely to Carrie Elliott and cited minor disagreements over things like t-ball and swimming lessons. However, the uncontradicted testimony of Carrie Elliott shows that Eric Elliott has likewise been the cause of many disagreements between them, such as Eric Elliott's refusal to administer medication prescribed by the child's physician because he felt that the *230 medication was not necessary, and Eric Elliott's admitted refusal to answer the telephone when he knew it was Carrie Elliott calling to speak to the children. Thus, while the record reflects that both parties have been guilty of causing some disagreements between themselves, the evidence did not establish that it was in the best interest of the children to modify custody.
Moreover, the record reflects that, since May 2001, the parties have shared equal physical custody of the two minor children without major incident. Additionally, the record reflects that since December 2001, the parties have been designated as co-domiciliary custodial parents and therefore, must agree on all major decisions concerning the welfare of the children. The previous custody decree specifically provided for a hearing before the court to resolve any disagreements concerning these major decisions. Other than Carrie Elliott's desire to leave Pointe Coupee Parish and the alleged disagreement over where the oldest child would attend school,[6] our review of the record reveals that the parties have never expressly invoked the above provision of the stipulated judgment. Thus, it appears that when it comes to major decisions concerning the welfare of the children, Eric Elliott and Carrie Elliot have been able to set aside their differences and reach an agreement; they have demonstrated that they can communicate when it comes to major decisions affecting their children. To the extent that the trial court found otherwise, based on our review of the record, we find there was no reasonable factual basis for such a finding and that it was clearly wrong.
Notwithstanding that a change of circumstances materially affecting the welfare of the minor children since the rendition of the December 12, 2001 stipulated judgment has not been demonstrated by this record, we further find that there is insufficient factual basis in this record to establish that a modification of the custodial plan as ordered by the trial court would be in the children's best interest.
The record does establish that both Carrie Elliott and Eric Elliott are good parents, have been able to provide the children with stable and loving homes, are able to care for the children, have a genuine concern for the children's needs, well being, and upbringing, and have expressed and demonstrated a sincere desire to be an active part of their children's lives. It does not appear from the record that the trial court considered the impact that the modification of the custody decree would have on the children, when it decreased Carrie Elliott's physical custodial periods and designated Eric Elliott as the sole domiciliary parent. But rather, the trial court explained that the justification for the modification of the custody decree and for the implementation plan that it ordered was that it was the "[s]ame as you [Carrie Elliott] offered him [Eric Elliott]."
We find that it was not in the children's best interest to modify the stipulated custody decree rendered on December 12, 2001 and we, therefore, reinstate that joint custody plan. While we are cognizant of the wide discretion afforded a trial court in making a custody determination, we believe it was an abuse of discretion to alter the physical custodial arrangement of these two children by ordering an arrangement whereby the children's time with their mother would be reduced to two weekends per month, when their mother was previously their primary caregiver and had shared physical custody of them.

*231 CONCLUSION
After reviewing the evidence presented at the trial of this matter, we find that the trial court erred and clearly abused its discretion in modifying the parties' custodial plan (and in not affording Carrie Elliott the opportunity to remain in Pointe Coupee Parish to retain shared custody of the children), because we find that there was no reasonable factual basis for the trial court's finding that a change of circumstances materially affecting the welfare of the children had taken place since the rendition of the stipulated judgment on December 12, 2001, and that a modification of custody was in the best interest of the children. Accordingly, we reverse the judgment of the trial court signed on August 27, 2004 insofar as it designated Eric Elliott as the sole domiciliary parent of the minor children. We vacate the joint custody plan rendered in furtherance of that judgment, which was signed by the trial court on August 16, 2004, and we further reinstate the stipulated judgment rendered on December 12, 2001 and signed on January 16, 2002, with regard to the designation of the parties as co-domiciliary custodial parents and with regard to the joint custody plan set forth in that judgment.[7]
All costs of this appeal are assessed equally between the parties.
JUDGMENT REVERSED; JOINT CUSTODY PLAN VACATED; AND STIPULATED JUDGMENT REINSTATED.
KUHN, J., concurs.
NOTES
[1] Carrie Elliott did not assign as error the trial court's decision to deny her request to relocate the residence of the children, and therefore, that issue is not before the court at this time.
[2] The record reflects that the parties previously entered into a stipulation on the record on May 18, 2001 with regard to the issues incidental to their marriage. When the parties were unable to reach an agreement as to the written form of the stipulated judgment, the trial court rejected each party's proposed written judgment and ordered that the incidental issues be reassigned for hearing on the next available rule date convenient for the parties.
[3] We note that Eric Elliott's request for a modification of custody was not addressed in the judgment rendered in open court on August 8, 2003. When a judgment is silent as to a claim or demand, it is presumed that the trier of fact denied the relief sought. Caro v. Caro, 95-0173 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 520. Accordingly, we find that his request for modification of custody was denied by the trial court.
[4] The trial court signed the joint custody plan rendered in furtherance of that judgment on August 16, 2004.
[5] See Masters v. Masters, 33,438 (La.App. 2nd Cir.4/5/00), 756 So.2d 1196, 1200, writ denied, XXXX-XXXX (La.12/7/01), 803 So.2d 975; and Evans, supra.
[6] Carrie Elliott testified that it was her desire for the child to attend school in Natchitoches, in the same school system where she would be teaching.
[7] In the event that there has actually been a change in circumstances materially affecting the welfare of the children since the July 16, 2004 hearing, it would be incumbent upon either party to file the appropriate pleadings requesting a modification of custody, thus allowing the trial court to reconsider what is in the best interest of the children.