GERALD KEITH LAWRENCE
v.
MELISSA ANN JULIAN
No. 2009 CU 0846.
Court of Appeals of Louisiana, First Circuit.
September 11, 2009.
Not Designated for Publication
VINCENT A. SAFFIOTTI, Attorney for Plaintiff-Appellant Gerald Keith Lawrence
TIFFANY M. PETERSON, Attorney for Defendant-Appellee Melissa Ann Julian
Before: WHIPPLE, HUGHES, and WELCH, JJ.
WELCH, J.
In this child custody dispute, the father, Gerald Keith Lawrence, appeals a judgment that increased the physical custodial time periods allocated to the child's mother, Melissa Ann Julian, from every other weekend to an equal sharing or 50/50 plan. For reasons that follow, we affirm the judgment of the trial court.

I. FACTUAL AND PROCEDURAL HISTORY
Mr. Lawrence and Ms. Julian are the biological parents of the minor child, D.L., born out of wedlock on May 9, 1999. On October 24, 2005, Mr. Lawrence filed a petition for custody requesting that the parties be awarded joint custody of the minor child, and that he be designated as the domiciliary parent, subject to reasonable visitation in favor of Ms. Julian. In response, Ms. Julian requested that she be designated as the child's domiciliary parent, subject to reasonable visitation in favor of Mr. Lawrence.
On January 10, 2006, a stipulated judgment was rendered,[1] which provided that the parties would be awarded joint custody of the minor child with Ms. Julian designated as the child's domiciliary parent and that the parties would share equal physical custody of the child on an alternating weekly basis. However, the stipulated judgment further provided that commencing August 5, 2006, Mr. Lawrence would be designated as the domiciliary parent, subject to physical custodial periods with Ms. Julian every other weekend. The stipulated judgment also provided that the physical custodial schedule would be reevaluated after the 2006-2007 school year.
In accordance with the provision of the stipulated judgment that provided that the physical custodial schedule would be re-evaluated, on September 14, 2007, Ms. Julian filed a rule requesting that the parties' custodial arrangement be re-evaluated and that she be designated as the minor child's domiciliary parent, subject to physical custodial periods in favor of Mr. Lawrence every other weekend. According to the minutes of the trial court, Ms. Julian's rule was continued on several different occasions, with the merits of her rule never being addressed by the trial court.
Thereafter, on July 8, 2008, Ms. Julian filed a petition for change of domiciliary parent and modification of custody arrangement, again requesting that she be designated as the minor child's domiciliary parent. A trial on this matter was held on January 14, 2009. On January 23, 2009, the trial court, for written reasons assigned, rendered judgment maintaining Mr. Lawrence as the domiciliary parent of the minor child, but modifying the parties' physical custodial periods to equal sharing on an alternating weekly basis. From this judgment, Mr. Lawrence has appealed.

II. ASSIGNMENTS OF EROR
On appeal, Mr. Lawrence asserts that the trial court manifestly erred in finding: (1) that there had been a change in circumstances materially affecting the welfare of the child since the original decree was rendered and (2) that the modification to the parties' custodial agreement that Ms. Julian proposed was in the best interest of the child.

III. STANDARD OF REVIEW
Every child custody case must be viewed in light of its own particular set of facts and circumstances. Elliott v. Elliott, XXXX-XXXX, p. 7 (La. App. 1st Cir. 5/11/05), 916 So.2d 221, 226, writ denied, XXXX-XXXX (La. 7/12/05), 905 So.2d 293. The paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577, p. 12 (La. 2/6/98), 708 So.2d 731, 738; La. C.C. art. 131. Thus, the trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Elliott, XXXX-XXXX at p. 7, 916 So.2d at 226.
In this case, and as in most child custody cases, the trial court's determination was based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court's factual findings in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.

IV. LAW AND DISCUSSION
There is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and of that needed to change a custody plan ordered pursuant to a non-considered decree (or stipulated judgment). See Evans, 97-0541 at pp. 12-13, 708 So.2d at 738. A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Id.; Elliott, XXXX-XXXX at p. 8, 916 So.2d at 227. By contrast, a non-considered decree is one in which no evidence is presented as to the fitness of the parents, such as one that is entered by default, by stipulation or consent of the parties, or is otherwise not contested. Id.
Once a considered decree of permanent custody has been rendered by a court, the proponent of the change bears the heavy burden of proving that a change in circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La. 1986). However, in cases where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in Bergeron is inapplicable. Evans, 97-0541 at p. 13, 708 So.2d at 738; Elliott, XXXX-XXXX at pp. 8-9, 916 So.2d at 227. Rather, a party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child. Evans, 97-0541 at p. 13, 708 So.2d at 738; Elliott, XXXX-XXXX at pp. 9,916 So.2d at 227.
In this case, the underlying custody decree is the January 10, 2006 stipulated judgment whereby the parties consented to a joint custody plan with Mr. Lawrence designated as the child's domiciliary parent subject to physical custodial periods in favor of Ms. Julian on every other weekend. Therefore, in order to modify that custody decree, as requested by Ms. Julian, Ms. Julian had to prove, and the trial court had to find, that: (1) a change in circumstances materially affecting the welfare of the child had occurred since the rendition of the January 10, 2006 stipulated judgment, and (2) the modification proposed by Ms. Julian was in the best interest of the child.
In this case, the trial court found that a material change in circumstances had occurred since the rendition of the stipulated judgment because the work schedule of Ms. Julian had changed significantly, thereby allowing the child and Ms. Julian to spend more quality time with each other. Additionally, the trial court found that the change in the mother's living environment that occurred since the rendition of the stipulated judgment was a material change in circumstances because it enabled Ms. Julian to provide an adequate living environment for the child.
On appeal, Mr. Lawrence asserts that the trial court manifestly erred in determining that these changes constituted a change in circumstances materially affecting the welfare of the child. Specifically, Mr. Lawrence asserts that there was no evidence in the record of Ms. Julian's work schedule prior to the rendition of the last judgment, that there was limited evidence of her current work schedule, and that there was no evidence that her work schedule affected the child. Therefore, Mr. Lawrence asserts that a purported change in Ms. Julian's work schedule is not a change in circumstances materially affecting the welfare of the child that would warrant a modification of custody. Additionally, Mr. Lawrence asserts that there is no evidence in the record of Ms. Julian's living environment prior to the rendition of the last judgment or how a change in her environment affected the child.
At the outset, we note that the record before us does in fact contain evidence of Ms. Julian's work schedule prior to the rendition of the January 10, 2006 judgment. Specifically, in paragraph 7 of Mr. Lawrence's original petition for custody, he alleged:
that [Ms. Julian] works a minimum of five days per week from 2:00 p.m. until 11:30 p.m. or later, depending on overtime, which results in the minor child being left with sitters every weeknight. This work schedule prevents [Ms. Julian] from spending any quality time with the minor child and [Ms. Julian] is not capable of providing him with his daily needs, such as providing dinner, assistance with homework, etc., on a nightly basis, due to her work schedule.
To this paragraph, Ms. Julian responded, in her answer, as follows:
The allegations of paragraph 7 are denied in part. [Ms. Julian] avers that she does work five days per week from 2:00 p.m. until 11:30 p.m. The minor child is left with an aunt and uncle who resides in same apartment complex and lives in an apartment directly in front of [Ms. Julian's]. [Ms. Julian] spends quality time with son every morning. She eats breakfast with him and places him on the bus every morning. On Thursdays, she spends an hour and a half at school with him. From 6:30 p.m. until 8:00 p.m., [Ms. Julian] helps minor child with homework and spends quality time with her son by telephone from work. [Ms. Julian's] aunt and uncle do provide dinner for her son when she is working; however, [Ms. Julian] provides his daily needs.
Thus, Mr. Lawrence's allegation in his original petition, together with Ms. Julian's admission in her answer, amounted to a judicial confession by Ms. Julian that she worked five days per week from 2:00 p.m. until 11:30 p.m. Accordingly, Ms. Julian's work schedule prior to the rendition of the January 10, 2006 judgment was established by the record.[2]
According to Ms. Julian's testimony, her current work schedule is from 7:00 a.m. to 3:00 p.m. Ms. Julian testified that, although she is with the same employer, she was recently able to have her schedule changed. With her new work schedule, Ms. Julian stated that during her custodial times she would only be away from the minor child in the morning before school. During that period of time, Ms. Julian testified that she would leave the child under the care of her sister, who resides in her home. Ms. Julian further testified that her new work schedule would enable her, during her custodial periods, to be with the child in the afternoons (when the child got out of school) and evenings, to assist the child with his homework, and to provide for the other needs of the child, that she was previously unable to provide due to her work schedule.
Mr. Lawrence asserts that this change in Ms. Julian's work schedule is insufficient to constitute a change in circumstances affecting the welfare of the child because Ms. Julian's work schedule was not at issue when the parties entered into the January 10, 2006 stipulated judgment. We disagree.
Notably, Ms. Julian's work schedule and its effect on her ability to spend quality time with and provide care for the minor child, along with Mr. Lawrence's allegation that the child had expressed a desire to reside with him, were the only reasons specifically urged by Mr. Lawrence in his original petition for custody as to why he should be designated as the domiciliary parent of the child. Thus, Mr. Lawrence's contention on appeal that Ms. Julian's work schedule was not an issue and did not affect the welfare of the child at the time the previous judgment was rendered is undermined by the specific allegations contained in paragraph 7 of his initial petition.
Furthermore, we find no manifest error in the trial court's conclusion that the change in Ms. Julian's work schedule was a change in circumstances materially affecting the welfare of the child. In its reasons for judgment, the trial court specifically found that the change in Ms. Julian's work schedule would allow Ms. Julian to spend more quality time with the child. The record, particularly the testimony of Ms. Julian, supports the trial court's determination in this regard. As the trial court noted, prior to the stipulated judgment, Ms. Julian's work schedule precluded her, during her custodial periods, from being at home in the evenings with her child, from assisting the child with his homework, and from providing for the needs of the child. Therefore, the only time during Ms. Julian's custodial periods that she was able to spend with her child was the brief period of time in the morning between the time the child woke up and left for school. However, as the trial court properly recognized, with the change in Ms. Julian's work schedule, she would be able to be at home with the child every afternoon when the child gets out of school, and she would be able to assist the child with his homework in the evenings, given that her new work schedule commences at 7:00 a.m. Thus, because Ms. Julian's new work schedule affirmatively affects the quality and care she is able to provide for the minor child, the trial court's factual finding that there was a change in circumstance materially affecting the welfare of the child since the rendition of the previous custody decree is supported by the record and is not clearly wrong.[3]
Having found no manifest error in the trial court's factual finding that a material change in circumstances affecting the welfare of the minor child had occurred, we must next consider whether the trial court erred in finding that the modification proposed by Ms. Julian, i.e., that she be awarded equal physical custody of the child, was in the best interest of the child.[4]
In determining the best interest of the child, La. C.C. art. 134 enumerates twelve non-exclusive factors to be considered by the trial court, which include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The list of factors set forth in this article is non-exclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. La. C.C. art. 134, comment (b).
In this case, a review of the record and the trial court's extensive reasons for judgment reveal, that in determining whether the modification proposed by Ms. Julian was in the best interest of the child, the trial court made a thorough analysis of the factors contained in La. C.C. art. 134. Specifically, the trial court found that both Mr. Lawrence and Ms. Julian compared favorably and equally in most of the factors under La. C.C. art. 134. The court determined that both parents had a great deal of love and affection for the minor child, had the capacity to give the child love and guidance in contributing to his upbringing, and had the capacity to provide his necessary material needs. The trial court further determined that both parties had the requisite degree of moral fitness and physical health to provide for the welfare of the child.
However, the trial court concluded that both parties had failed to communicate with each other with regard to the child. In this regard, the trial found it was unacceptable that Ms. Julian had been forced to communicate with the minor child and with Mr. Lawrence through Mr. Lawrence's current wife's mobile phone. Additionally, the trial court expressed concern about the stability of Mr. Lawrence's living environment, particularly given the testimony concerning the numerous disputes at home between Mr. Lawrence and his current wife, the child's apparent discomfort with these disputes, and the resulting displacement of the child from the family home with Mr. Lawrence as a result of these disputes. The trial court also found that both parties had failed to make adequate efforts to encourage a close and continuing relationship between the child and the other party. The only concern of the trial court concerning Ms. Julian was that she had allowed overnight guests of the opposite sex in her home while the child was present; however, the trial court felt that concern could be resolved by an order prohibiting such conduct.
Lastly, the trial court found that there was a notable distance between the respective parties' residences, but determined that distance would not be a significant impediment to a 50/50 shared custody plan, especially if the exchange of the minor child took place on the weekends. Although the trial court also noted a distance between the child's school and Ms. Julian's home, the trial court also was not concerned about the distance as Ms. Julian expressly testified to her willingness and ability to transport the child to and from school as necessary.
After reviewing the evidence and discussing the factors set forth in La. C.C. art. 134, the trial court concluded that it was in the best interest of the child that Mr. Lawrence be maintained as the domiciliary parent of the child and that the parties share equal physical custody of the child on a 50/50 basis. Based upon our review of the record, we find that the trial court's factual findings in this regard are reasonably supported by the record and are not manifestly erroneous.
Therefore, considering the record as a whole, we do not find that the trial court abused its discretion in modifying the parties' custodial arrangement to 50/50 or equal custody.

IV. CONCLUSION
After reviewing the evidence presented at the trial of this matter, we find that there was a reasonable factual basis in the record for the trial court's finding that a change of circumstances materially affecting the welfare of the child had taken place since the January 10, 2006 stipulated judgment and that a modification of custody to equal sharing or 50/50 was in the best interest of the child. Therefore, we do not find that the trial court erred or abused its discretion in modifying the parties' custodial plan. Accordingly, we hereby affirm the January 23, 2009 judgment of the trial court.
All costs of this appeal are hereby assessed to the plaintiff/appellant, Gerald Keith Lawrence.
AFFIRMED.
NOTES
[1] This stipulated judgment was not signed by the trial court until August 1, 2006.
[2] An admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. C.T. Traina, Inc. v. Sunshine Plaza, Inc., XXXX-XXXX, p. 5 (La. 12/3/03), 861 So.2d 156, 159. A judicial confession has the effect of waiving evidence as to the subject of the admission.
[3] Because we have found no error in the trial court's determination that the change in Ms. Julian's work schedule was a change in circumstances materially affecting the welfare of the child, we need not address the other change in circumstance cited by the trial court in its reasons for judgment, i.e. the purchase of a new home by Ms. Julian.
[4] Although Ms. Julian also requested that she be designated as the child's domiciliary parent, the trial court did not grant such request. Since Ms. Julian did not appeal the trial court's decision in this regard, we need not review whether that portion of Ms. Julian's proposed modification of custody was in the best interest of the child.