978 So.2d 916 (2007)
Karen Harris STEVENS
v.
Michael Paul STEVENS.
No. 2007 CU 1133.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Rehearing Denied December 28, 2007.
*917 Joseph L. Waitz, Houma, LA, for Plaintiff-Appellant Karen Harris Stevens and Intervenors-Appellants Elsie Hathorn and Don Harris.
Joan M. Malbrough, Houma, LA, for Appellee-Defendant Michael Paul Stevens.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
The maternal grandparents of a minor child seek review of a custody decree. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Michael Paul Stevens married Karen Harris in Terrebonne Parish, Louisiana, on February 19, 2000. Three years later, Karen gave birth to a son that was not Michael's biological child, of which fact Michael was aware. In October 2003, Michael moved to Arkansas and the couple was thereafter divorced by a judgment signed October 15, 2004. In a separate consent decree signed on October 26, 2004, Michael and Karen were awarded joint custody of the minor child, with Karen being designated the domiciliary custodial parent.
In March 2005, Michael filed a rule seeking sole custody of the minor child and *918 an ex parte order of provisional custody,[1] alleging that he had gone to the former matrimonial domicile in Terrebonne Parish and discovered that Karen and the child were living in the home without any running water or electricity, Michael further alleged that Karen was allowing her boyfriend, who was a drug addict, to reside in the home with her and the minor child, that Karen was abusing alcohol and drugs, and that the house was unclean and disorderly. Thus, Michael asserted that due to Karen's "reckless . . . and unhealthy lifestyle," she was unable to provide a wholesome environment for the minor child or to care for the child without supervision.
Despite the serious allegations raised in the rule, following a hearing, the parties entered into a consent decree that was signed by the trial court on May 25, 2005, agreeing that they would continue to share joint custody of the child under the following pertinent conditions:
 That Karen reside with one or both of her parents in Jackson, Mississippi at all times when she had physical custody of the minor child.
 That Michael not take the minor child with him when he was away from his home in Fayetteville, Arkansas working in his family carnival business until the child reaches a mutually agreeable age.
 That the judgment shall be effective for a period of three (3) months pending further discovery, then after three (3) months, a new hearing would be set unless the parties agreed to continue the custody arrangement outlined in the consent decree indefinitely.
Scarcely a month later, Karen filed a petition seeking sole custody of the minor child and also requesting that Michael's name be removed from the child's birth certificate and that the child's last name be changed to "Harris." In response, Michael filed an exception raising the objection of no cause of action and a motion to reset the hearing on his rule for sole custody. A hearing on the cross pleadings was held on September 30, 2005, following which the parties again entered into a consent judgment that provided for dismissal of Karen's petition for sole custody; for continuance without date of Michael's rule for sole custody; for continued joint custody of the child, with Michael being designated the domiciliary parent; for Karen's enrollment in a drug rehabilitation/substance abuse treatment program; and for Karen to receive reasonable visitation with the child supervised by Michael or a person designated by Michael. The judgment was signed November 7, 2005.
The parties functioned under the November 7, 2005 consent decree without dispute until June 2006, when Elsie Hathorn, Karen's mother, filed a rule for contempt, or alternatively, for temporary care and custody, against Michael. In the pleading, Elsie alleged that Michael was in contempt of the May 25, 2005 consent decree by virtue of his taking the minor child with him on his travels with his carnival business. She further alleged that such conduct was not conducive to providing a stable home for the minor child. Although alternatively Elsie alleged that she was seeking only temporary care, custody and control of the minor child until "further hearings, or at least until Michael Stevens returns to the Arkansas area from his summer route," she further indicated that ultimately she was seeking to be granted permanent care, custody and control of the minor child. Thereafter, Karen filed a "First Supplemental and Amended Petition,"[2] *919 reasserting her request for sole custody of the minor child and joining in her mother's request for temporary care, custody and control of the minor child to be shared with Elsie.
Michael responded to the pleadings by filing an exception urging the objection of no right of action against Elsie's request for custody. He further requested that sanctions be assessed against Elsie and Karen based on the accusations made in their pleadings, that an order of contempt be issued against Karen for failure to pay child support, and that a continuance of the hearing on Karen and Elsie's claims be granted. Michael's motion for a continuance was granted, and the trial court reset the hearing on the claims raised by Karen and Elsie for July 21, 2006, to be heard along with the requests submitted by Michael. On the day before the hearing, Don Harris, Karen's father, intervened in the proceedings requesting that he be granted an order of visitation with the minor child.
At the July 21, 2006 hearing, the trial court considered the testimony of the parties, Karen's parents, and Michael's current wife, as well as exhibits introduced by the parties. After taking the matter under advisement, the trial court rendered judgment awarding Michael sole custody of the minor child; denying Karen any visitation until such time as she "appears before this Honorable Court and convinces the Court that she is drug free;" and awarding the maternal grandparents two weeks of visitation with the minor child in the summer of 2006 and monthly visitation thereafter to take place "in any state other than Mississippi to ensure that Karen Harris Stevens is not exposed to the minor child." It is from this judgment, signed August 14, 2006, that the maternal grandparents appeal.

ASSIGNMENTS OF ERROR
By this appeal, the maternal grandparents (intervenors) seek review of the trial court's decree in the following respects:
1. The Trial Court erred in granting to and unto the appellee, in essence, total and complete custody of the minor child;
2. The Trial Court erred in its ruling, relative to the visitation rights of the grandparents, which was tantamount to no visitation at all; and
3. The Trial Court erred in tacitly overruling the Consent Judgment of May 25, 2005, agreed to by the parties hereto, and their then attorneys.

DISCUSSION
In their first assignment of error, the intervenors allege that the trial court erred in granting sole custody of the minor child to Michael. We find no merit in this assignment of error.
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment. La. C.C. art. 133 (emphasis added). However, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. *920 La. C.C. art. 132. According to article 134 of the Louisiana Civil Code, the following are the relevant factors that should be considered by a court in making a best interest of the child determination:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Intervenors assert that because Michael has a large family, has an annual income of approximately $17,000 a year, and lives with his family in a recreational vehicle (RV) part of the year while operating his carnival business during the carnival season, it is not in the best interest of the minor child for Michael to be granted sole custody. Other than recounting these facts, and that Michael is not the minor child's biological father, the intervenors presented no evidence proving or even indicating that the minor child has been substantially harmed while living with Michael under these circumstances.
On the other hand, Michael presented the trial court with plenty of evidence to indicate that living with him has been beneficial to the child. In his testimony, Michael explained that although the carnival season lasts from approximately May to October, he only travels on the road with his family in an RV[3] for approximately two and a half months of the season. During the rest of the season, Michael said he commutes from his home in Arkansas. As for housing, Michael testified that at the time of the hearing, he and his wife were negotiating to purchase some property with two homes on it, since they had decided not to renew their lease on a home that they had been leasing.
While traveling in the RV, Michael explained that his wife's two oldest children, girls ages 17 and 19, did not stay with them, but would come for short visits. Instead, the daughters stayed with the wife's parents in Missouri to complete their education (the oldest was in college) *921 and to receive some necessary medical treatment. The wife's other two children from a previous relationship, boys ages 8 and 10, resided with them when his wife exercised her time of joint custody. Finally, in addition to the minor child at issue, who was approximately three and a half years old at the time of trial, Michael and his wife had a 9-week-old baby and an 18-month-old toddler. The pictures of the RV introduced into evidence showed a two-bedroom dwelling, comfortably furnished and neatly maintained.
Michael and his wife both testified that when Michael gained physical custody of the minor child, the child had many health and developmental problems that were not being addressed when the child was in the mother's care. Since gaining physical custody of the child, the minor child maintained regular visits with his pediatrician and a physical therapist, resulting in marked improvement of the child's health and development. Michael's wife, who testified that she has a degree in special education and was three classes shy of a master's degree, also assisted the minor child in attaining the noted improvement in his health and development.
Finally, according to the testimony presented at trial, despite the knowledge that the minor child was not his biological son, the evidence shows Michael always loved, cared and had affection for the child and accepted him as his own. The pictures presented by Michael show the minor child as being happily merged in with Michael's new family. Further, although he opposed allowing the minor child to stay with the intervenors for the entire summer, Michael testified that he was more than willing to allow the intervenors to come visit the minor child in his home at any time and that he would be willing to bring the child for visits with them and Karen as often as he could, as long as he supervised such visits. Michael explained that he did not trust the intervenors' because of their prior actions of leaving the minor child alone in Karen's care, in failing to notify him when the child was sick while in their care, and in failing to allow him to supervise visits between the minor child and Karen.
Considering the factors outlined in La. C.C. art. 134 and the evidence presented, we find the evidence presented supports the trial court's determination that it was in the best interest of the child to award sole custody to Michael.
Likewise, we find no merit in the intervenors' second assignment of error contesting the visitation award granted them. By the pleadings filed and the evidence presented at trial, it is clear that the intervenors are hostile to recognizing Michael's parental rights. Elsie testified almost defiantly at the hearing that she would rather have no visitation than to be prohibited from allowing Karen to see the child should visitation be granted her under such conditions. Further, evidence that the intervenors' breached an informal agreement with Michael not to leave the child alone in Karen's care in September 2005, and that they later breached a provision in the November 7, 2005 judgment mandating that the intervenors not allow Karen to visit with the minor child without Michael's supervision or the supervision of someone he designated, support the trial court's decree. We, accordingly, reject this assignment of error.
As for the intervenors' final assignment of error regarding the May 25, 2005 consent decree, we reject this assignment as meritless. By the plain language of the judgment itself, the judgment was only effective for three months, "unless the parties agreed to continue the custody arrangement indefinitely." This did not occur. Scarcely a month later, Karen filed a *922 petition seeking to nullify the decree, following which Michael filed a pleading seeking to reurge his request for sole custody. Thus, by operation of the decree itself, the parties were not bound by its provisions following the expiration of the term outlined therein. This assignment of error is thus rejected.

CONCLUSION
For the foregoing reasons, the custody decree is affirmed. All costs of this appeal are to be borne by Elsie Hathorn and Don Harris.
AFFIRMED.
WHIPPLE, J., concurs in part and dissents in part:
In my view, the trial court erred in granting the grandparents such restricted visitation and in imposing the condition that such visitation occur outside their state of residence. The record does not support such punitive measures.
NOTES
[1] In the same rule, Michael also sought an order partitioning the parties' community property, which demand is not at issue in this appeal.
[2] It is observed that the original petition for custody was dismissed in the November 7, 2005 consent decree.
[3] Michael described the RV as a "5th Wheel Travel Trailer . . . type of trailer that hooks up to a truck in the bed, and it has  it is forty-eight (48') feet in length; and it has three (3) slide-outs and as much square footage when it opens up. as a travel trailer  or rather a trailer  you know a regular trailer in a trailer park."