LESLIE BOYD FRIEDMAN
v.
IRINA NICOLE FRIEDMAN
No. 2009 CU 0476
Court of Appeals of Louisiana, First Circuit.
June 12, 2009.
Not Designated for Publication.
SYDNEY PICOU, St. Francisville, LA, Counsel for Plaintiff/Appellee, Leslie Boyd Friedman.
MARK D. PLAISANCE, Baker, LA, MARCUS FOOTE, CHRISTOPHER MENSMAN Baton Rouge, LA, CHARLENE C. DAY, Zachary, LA, Counsel for Defendant/Appellant, Irina Nicole Friedman.
Before: CARTER, C.J., WHIPPLE and DOWNING, JJ.
WHIPPLE, J.
In this custody case, appellant, Irina Nicole Friedman, the mother of the minor child, Evan Friedman, appeals the October 29, 2008 judgment of the trial court awarding sole custody of the child to appellee, Leslie Boyd Friedman, the father of the child. On appeal, Mrs. Friedman contends that the trial court erred: (1) in granting Mr. Friedman sole custody; (2) in failing to award a specific visitation plan; and (3) in failing to designate Mrs. Friedman as the domiciliary parent.
For the following reasons, we vacate the portion of the judgment awarding Mr. Friedman sole custody and award the parties joint custody of the minor child; we remand to the trial court for implementation of a specific visitation schedule; and we affirm the portion of the trial court's judgment designating Mr. Friedman as the domiciliary parent.

DISCUSSION
The best interest of the child is the guiding principle in all custody litigation. LSA-C.C. arts. 131 and 134. Keeping in mind that every child custody case must be viewed in light of its own particular set of facts, the jurisprudence recognizes that the trial court is generally deemed to be in the best position to ascertain the best interest of the child given each unique set of circumstances and because of its superior opportunity to observe the parties and the witnesses who testified at the trial. Babin v. Babin, XXXX-XXXX (La. App. 1st Cir. 7/30/03), 854 So. 2d 403, 408, writ denied, 2003-2460 (La. 9/24/03), 854 So. 2d 338, cert, denied, 540 U.S. 1182, 124 S.Ct. 1421, 158 L.Ed.2d 86 (2004); State in the Interest of A.R., 99-0813 (La. App. 1st Cir. 9/24/99), 754 So. 2d 1073, 1078. Accordingly, the trial court is vested with a vast amount of discretion in child custody cases; and its determination of custody is entitled to great weight, which will not be reversed on appeal unless an abuse of discretion is clearly shown. Elliot v. Elliot XXXX-XXXX (La. App. 1st Cir. 5/11/05), 916 So. 2d 221, 226, writ denied, XXXX-XXXX (La. 7/12/05), 905 So. 2d 293; State in the Interest of A.R., 754 So. 2d at 1077.
In this case, as in most custody cases, the trial court's determination was based on factual findings, which are subject to the manifest error standard of review. Specifically, an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So. 2d at 844. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, through the Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). Thus, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Stobart v. State, through the Department of Transportation and Development, 617 So. 2d at 883.
In her first assignment of error, Mrs. Friedman contends that the trial court erred in awarding Mr. Friedman sole custody, particularly where the appellee did not establish by clear and convincing evidence that sole custody was in the best interest of the minor child and where both parents had no objection to an award of joint custody. After careful review of the record, we find merit to Mrs. Friedman's claim.
In addition to the fact that both parties agreed to share joint custody of Evan, Mrs. Friedman relies on the recommendation of Dr. Alan L. Taylor, a clinical psychologist, who provided a custody assessment in this matter. After interviewing and performing assessments of both parents and the child, Dr. Taylor specifically recommended that the parties share joint custody of the minor child.
In granting Mr. Friedman sole custody, the trial court cited a lack of communication between the parties, noting, as follows, in its written reasons for judgment issued July 24, 2008:
Mr. Friedman presented himself as a soft spoken rather laid back individual while Mrs. Friedman seemed to have a very pushy, "in your face" type personality and attitude. During the course of the hearing on several occasions, and despite admonitions from the Court and her attorney, Mrs. Friedman insisted on saying what she wanted to say regardless of objections or requests from the Court and the attorneys to cease and desist. Mr. Friedman insisted that Mrs. Friedman takes a position and will not listen to him. Mrs. Friedman testified that Mr. Friedman will not listen to her at all. Any discussions about Evan concerning [medical treatment], education, religion, extracurricular activities, college choices, playground and outdoor activities would likely result in an impasse between the parents to the detriment of the child. Because the lack of communication between the parents is so profound and fixed, the Court cannot conclude that a finding of joint custody would be in the best interest of the child, short of some agreement between the parties. To use a time worn phrase, it appears that the parties cannot agree on the time of day.
Also, in making its sole custody determination, despite the evidence of the close and loving relationship of Mrs. Friedman with Evan, the trial court narrowly focused upon the portion of Dr. Taylor's assessment, where he concluded that "[t]he relationship between Les and Irina is too conflicted to allow for the type of communication and cooperation that would [be] essential to a joint parenting arrangement."
Mrs. Friedman contends that although communication between the parties has been poor, a lack of communication alone is insufficient to justify an award of sole custody, particularly given the heightened preference of joint custody as set forth in the amended provisions of LSA-C.C. art. 132, and considering the record herein, as a whole.
Louisiana Civil Code article 132, as enacted by Acts 1993, No. 261, §1, effective January 1, 1994, provides as follows:
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.
In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
Given the precepts set forth in LSA-C.C. art. 132, the issue before the court is whether the record supports the conclusion that joint custody is not in the best interest of the child and whether the record shows, by clear and convincing evidence, that the award of sole custody to Mr. Friedman is in the best interest of the child. Walet v. Caufield, 2002-2009 (La. App. 1st Cir. 6/27/03), 858 So. 2d 615, 622-623; Palazzolo v. Mire, XXXX-XXXX (La. App. 4th Cir. 1/7/09), ___ So. 2d ___, ___. Further, the record must show, by clear and convincing evidence, that the award of custody to that parent will serve the best interest of the child. Walet v. Caufield, 858 So. 2d at 622.
At the outset, we note that in cases where sole custody has been awarded subsequent to the amendments to LSA-C.C. art. 132, the facts and circumstances supporting the denial of joint custody have been much more egregious than the circumstances presented herein. See, e.g., Stevens v. Stevens, XXXX-XXXX (La. App. 1st Cir. 11/2/07), 978 So. 2d 916 and Hawthorne v. Hawthorne, 96-89 (La. App. 2nd Cir. 5/22/96), 676 So. 2d 619, writ denied, 96-1650 (La. 10/25/96), 681 So. 2d 365. Moreover, given the facts presented herein, we find the evidence insufficient to support a finding, by clear and convincing evidence, that an award of sole custody to Mr. Friedman is in the best interest of the minor child. Accordingly, we vacate the trial court's award of sole custody of the minor child to Mr. Friedman and amend the judgment to award joint custody of Evan to Mr. Freidman and Mrs. Friedman. In doing so, we recognize that an inability to agree, without more, is insufficient to defeat the presumption in favor of joint custody.[1]
Pretermitting whether a trial court can properly condition the right to visitation by a loving and suitable parent upon her agreement to reside in a particular town or area favored by the trial court, clearly, because we find Mrs. Friedman is entitled to, and the best interest of the child is most appropriately served by, an order of joint custody, we remand for the trial court to determine a specific and liberal schedule for exercise of joint physical custody, as requested by Mrs. Friedman on appeal. In doing so, the trial court should consider the parties' respective schedules and any other appropriate considerations, to facilitate liberal joint physical custody, pursuant to LSA-R.S. 9:335.
Finally, Mrs. Friedman contends that the trial court erred in designating Mr. Friedman as the domiciliary parent.[2] In support, Mrs. Friedman cites Mr. Friedman's rigorous work schedule, which requires that Evan wake up at 4:30 a.m. to be transported to a sitter's home on mornings when Mr. Friedman works "days" and to sleep at another sitter's home when Mr. Friedman works "nights," contending that if Evan were allowed to live with her in Baton Rouge, Evan would be able to spend the night with a parent every night, wake up at 7:00 a.m., and to then attend school, which is within walking distance of her home. As further support, Mrs. Friedman relies on Dr. Taylor's recommendation that she be designated the domiciliary parent.
Contrariwise, Mr. Friedman contends that despite his work schedule, he has provided a stable home and consistency for Evan; that he has been an integral part of Evan's life; that he has participated in Evan's school activities and has tended to Evan's medical needs; and that he ensured that Evan has the proper school clothes, supplies, and lunch on a daily basis. He further contends that the home where he and Evan live has been the only home Evan has known since his birth. Contending that the trial court properly awarded him domiciliary custody, he contends that he is most able to provide more consistency and stability for Evan. Specifically, Mr. Friedman cites incidents where Mrs. Friedman was late picking Evan up from the sitter's home, and numerous incidents in 2006 and 2007, when they were all living together, where she returned home late in the evening or not at all.
In designating Mr. Friedman as the domiciliary parent, the trial court thoroughly reviewed and discussed the factors set forth in LSA-C.C. art. 134 in attempting to determine the best interest of the child.[3] After careful consideration of these factors, the trial court concluded that Evan's best interest required that Mr. Friedman be designated as the domiciliary parent. In doing so, the trial court noted in part, as follows:
Evan's entire life has been spent in a relatively rural environment in the Tunica area of West Feliciana Parish. Tunica is a close knit/neighbor oriented type of community where all the residents are known to each other. Students in school, teachers, and other community ties are very close. Mr. Friedman's existing residence is a typical brick veneer suburban type home situated on four and a half acres which has a variety of terrain, such as hills, trees, yard, et cetera. Mrs. Friedman's [proposed] residence for Evan would involve apartment living in Baton Rouge in the Fairview Apartments on College Drive just north of the Corporate Mall area. Her current apartment is a first floor one bedroom apartment situated approximately fifty yards from College Drive and her [proposed] new apartment would have two bedrooms in roughly the same area, except on the second floor of the apartment complex. Mrs. Friedman and her son Daniel, who also lived for some period of time in the same apartment complex, were not able to recall the names of any of their neighbors or any support group in the neighborhood. Mrs. Friedman, when questioned about where Evan might be able to play or enjoy recreational activities after school, replied that she would have to drive Evan back to the playground of Westdale Elementary Magnet School where she intends to place young Evan for his continuing education. The Court feels that it would be most desirable to maintain the only surroundings that he's ever known, that is, the Tunica communityf,] which is a stable community oriented type environment as opposed to the totally urban environment [proposed] by Mrs. Friedman.
The trial court further noted that Evan was an exceptional student and felt that it would be in his best interest if the same home, school, and community environment were maintained.
Applying the standard of review by which we are bound, we cannot say that the trial court erred in this determination. Thus, we find no error in the trial court's implicit designation of Mr. Friedman as the domiciliary parent.
With reference to Mrs. Friedman's reliance on Dr. Taylor's recommendation that she be designated as the domiciliary parent, we note that the trial court may accept or reject the opinion expressed by an expert, in whole or in part. Green v. K-Mart Corporation, 2003-2495 (La. 5/25/04), 874 So. 2d 838, 843. Moreover, the trier of fact may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Green v. K-Mart Corporation, 874 So. 2d at 843. Given the evidence of record supporting the trial court's factual findings on this issue, we find no error in the trial court's designation of Mr. Friedman as domiciliary parent.

CONCLUSION
After a thorough review of the entire record and evidence in this matter, we vacate the portion of the October 29, 2008 judgment awarding Mr. Friedman sole custody and hereby amend the judgment to provide that the parties are awarded joint custody of the minor child; we remand to the trial court with instructions to implement a specific and liberal joint custody implementation order for the exercise of physical custody by Mrs. Friedman; and we affirm the portion of the trial court's judgment designating Mr. Friedman as the domiciliary parent. Costs of this appeal are assessed one-half each to Irina Nicole Friedman and Leslie Friedman.
VACATED IN PART, AMENDED IN PART; AFFIRMED IN PART; AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Here, the court recognized that Mrs. Friedman has a close and loving relationship with her child, and stated that she is entitled to visitation, but did not implement a visitation schedule. Instead, the court merely ordered that the parties submit a "liberal visitation schedule." Of further concern to this court is the trial court's seemingly indeterminate (and clearly unworkable) "option plan," which, as Mrs. Friedman notes, was tantamount to no visitation schedule.
[2] Although the trial court did not specifically designate Mr. Friedman as the domiciliary parent, we note that this finding is implicit in its award of sole custody to Mr. Friedman.
[3] Louisiana Civil Code article 134, titled, "Factors in determining child's best interest" provides as follows:

The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.