591 So.2d 1272 (1991)
Leonard Edward MONTGOMERY, Plaintiff-Appellant,
v.
Janet Marie MARCANTEL, Defendant-Appellee.
No. 90-682.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
Rehearing Denied January 29, 1992.
Dauzat, Falgoust, Caviness, Bienvenu & Stipe, Steven Bienvenu, Opelousas, for plaintiff-appellant.
Sandoz, Sandoz & Schiff, Anne F. Watson, Opelousas, for defendant-appellee.
Before FORET, STOKER and DOUCET, JJ.
FORET, Judge.
This is a dispute over child custody. The father, Leonard Edward Montgomery (Eddie), appeals the judgment of the trial court which modified a joint custody plan by awarding sole custody of his minor daughter to her mother, Janet Marcantel (formerly Montgomery), subject to Eddie's visitation privileges.
Eddie contends the trial court erred in granting the mother's rule for sole custody because she failed to establish that joint custody was not in the best interest of the minor and failed to carry the burden necessary to modify a considered joint custody decree. We agree.
For the reasons hereinafter stated, we reverse and reinstate the original joint custody decree.

*1273 FACTS
The parties were married on June 10, 1978. Of this marriage, one child was born, Sarah Montgomery, who was born on February 19, 1981. Eddie obtained a judgment of separation on August 19, 1982, and obtained a judgment of divorce on September 29, 1983. Throughout the separation and divorce, Janet was the custodial parent, subject to the father's visitation rights.
In May of 1985, Janet relinquished custody to Eddie when she entered military service. Sarah lived with her father for one year. In September of 1986, Janet filed a rule to dissolve the consent decree and regained custody of Sarah. Janet took Sarah to Virginia. However, in December of 1986, Janet once again relinquished custody to Eddie.
In January of 1987, when Janet again sought to remove the child from Louisiana and return to Virginia, the father filed a rule for injunctive relief and for change of custody. Custody was awarded to Eddie.
Janet, remarried to Carlos Lopez, left Virginia and returned to Louisiana. In July of 1987, Janet filed a rule for custody, which was denied. In June of 1988, Janet again brought a rule for custody, and joint custody was awarded, with physical custody to be alternated on a calendar month basis.
In January of 1990, Janet filed another rule for custody and was awarded the sole custody of the minor by a judgment signed on February 26, 1990. This appeal was then perfected.
Janet argues that the child is living in an unwholesome domestic environment. She asserts that Eddie was conducting an illicit relationship, in which he had his girlfriend, Bonnie Savoie, move into his home. Janet contends that she should be awarded sole custody of the child based on Eddie's moral unfitness.
The trial judge, in a minute entry reflecting his ruling on the matter, stated: "Rule to change custody made absolute and wife granted custody subject to visitation by husband. In default of an agreement court will set specific visitation. In any event, father's visitation will not be allowed in the presence of paramour."

LAW AND DISCUSSION
Custody of children after divorce is regulated by La.C.C. art. 157 and by reference, Article 146.[1] The parent seeking the change in custody bears the burden of proving that existing custody is so deleterious to the child as to justify modification of the custody decree or if proven by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
The moral fitness of the parties is only one of eleven factors to be considered in determining when the presumption in favor of joint custody has been rebutted by a showing that it is not in the best interest of the child. La.C.C. art. 146(C). A parent's actions and attitudes toward sex outside of marriage are but one aspect of moral fitness. Here, the only evidence of moral unfitness presented was Eddie's living with Bonnie. At the hearing, both Eddie and Bonnie admitted living together in Eddie's home since December of 1989. Eddie's open association with Bonnie did not cease upon Janet's filing the rule for custody. The relationship between Eddie and Bonnie appears to be stable. Although not morally perfect, the evidence preponderates in favor of the conclusion that he has otherwise been a good father to Sarah.
The issue here is not whether the relationship between a man and a woman is morally acceptable, but whether that relationship adversely affects the child involved. We cannot conclude from the record that this relationship alone has had *1274 a detrimental effect on Sarah. The only evidence Janet presented to show that the relationship had an adverse effect on Sarah was a bad grade in social studies. We find that evidence to be inconclusive in that both the parents shared custody during the period before the grade was reflected on Sarah's report card. No other evidence had been presented to indicate that Eddie's relationship with Bonnie has had any detrimental effect on Sarah. On the contrary, Eddie presented an expert in child welfare with a master's degree in social work, licensed by the Board of Certified Social Work Examiners and over eight years as a professional social worker who had known Eddie and Sarah for several years. Based not only upon his familiarity with them, but also upon an interview with them and his observation of them over a period of years, he testified that there was a great deal of bonding between Sarah and Eddie, and there was no indication of any detriment to Sarah arising out of her father's relationship with his girlfriend.
Furthermore, Bonnie appears to be an accepted member of the family unit. She tends to Sarah when Eddie works; she takes Sarah to and from school, cooks meals for Eddie and Sarah, and performs other domestic services. Testimony reveals that Bonnie and Sarah have a good relationship.
An award of custody is not a tool to regulate human behavior. Cleeton v. Cleeton, 369 So.2d 1072 (La.App. 1 Cir.1979); writ granted, 373 So.2d 522 (La.1979); 383 So.2d 1231 (La.1979); 70 A.L.R.3d 475. In Stephenson v. Stephenson, 404 So.2d 963 (La.1981), a unanimous Supreme Court reversed the appellate court and awarded custody to a mother living in open adultery as she was otherwise a good parent. In Cleeton, on rehearing, the Supreme Court held that to change custody simply because of concubinage would be to punish the mother when there is no proof of detrimental effect on the daughters. We recognize that in today's society conduct which would once have been scandalous is acceptable or, perhaps, even the norm. We can no longer immediately conclude that a situation where a couple living together without the benefit of marriage, without any evidence to support the conclusion, is injurious to a child's well being. We are no longer willing to speculate on such matters.
In the appellate review of cases involving child custody, the trial court's determination of what is in the best interest of the child is given great weight, and will not be overturned unless there is a clear showing that the trial judge abused his discretion. Cleeton, supra; Stephenson, supra. After carefully examining this record, we find that the trial judge erred in awarding custody of the minor child to her mother. Accordingly, we believe the trial court's ruling which has the effect that concubinage is detrimental to the best interest of the child is an error. The record does not disclose that the couple's intimate matters of private concern are exposed to the child or that there is any adverse effect upon Sarah. The custody order appealed from is reversed. The June, 1988 joint custody order is reinstated.
Costs of this appeal are assessed to defendant, Janet Marie Marcantel.
REVERSED and RENDERED.
NOTES
[1] Effective January 1, 1991, Art. 157 was redesignated as Art. 134 and Art. 146 was redesignated as Art. 131.