CARTER, C.J.
12This is an appeal of a judgment lifting a restriction in a consent judgment.
FACTS AND PROCEDURAL HISTORY
Randy Kingston and Sally Kingston were divorced on March 17, 2008, after nearly six years of marriage. Pursuant to *776 a 2008 consent judgment, they share joint custody of then* son (now age eight) and daughter (now age six), and are co-domiciliary parents sharing physical custody equally. Additionally, the consent judgment included the following restriction (referred to herein as “the restriction”) against either parent having overnight guests of the opposite sex while exercising custody of the children or allowing a significant other to babysit the children:
IT IS FURTHER ORDERED that no girlfriends or boyfriends shall babysit the children and neither party shall have overnight visitation with members of the opposite sex while they have possession of the children. The parties recognize that the children have sleepovers with their friends, that family members are permitted to spend the night with the children, and that, in Mrs. Kingston’s case, a female girlfriend may spend the night when she has possession of the children.
In September 2010, Sally filed a rule to modify the terms of the consent judgment. Sally alleged that she is now engaged to a man with whom she has had a loving, committed relationship for a number of years, but that she has chosen not to set a date and time for the marriage. She contends that her fiancé has become an integral part of her children’s lives and that the loving relationship she and her fiancé have includes her children as well as children of her fiancé’s prior marriage. Sally contended that the court entered the consent judgment containing the restriction without any consideration of the best interests of the children, therefore, the judgment is |3against public policy and the restriction should be recognized as a nullity. Sally further contended that the “apparent present restriction on [her] visitation privileges” is not in the children’s best interests “and there can be no showing whatsoever that [her fíancé’s] presence overnight or otherwise, is anything but in the best interest of the children.”
Randy objected to Sally’s rule to modify on the basis that it failed to state a cause of action. Randy argued that Sally’s rule failed to allege either a material change in circumstances since entry of the original custody decree or that the proposed change is in the best interests of the children. After a hearing, the trial court noted the lack of jurisprudential guidance as to whether removal of the restriction is actually a change in physical custody. The trial court then overruled the objection, finding that the pleadings stated what could be a material change in circumstances (the parties were divorced as was Sally’s fiancé) and that the matters were more properly determined on the merits.
A hearing was then held on the merits of Sally’s rule to modify, at which both Sally and Randy testified. At the conclusion of the hearing, in oral reasons, the trial court stated that it considered the restriction to be “a restriction or condition on visitation that was done voluntarily between the parties and by consent at a time when their separation from each other and their impending divorce was very new. Their children were at a very, very young age. Emotions were running high.” The trial court noted its opinion that the parties’ agreement to the restriction was, at that time, in their children’s best interests.
|4The trial court found that since then, Sally had become engaged and had begun to establish another family unit. In considering the best interests of the children, the trial court found:
that there are significant benefits that [Sally] would have and that, at this point in time, dictate the Court to remove those former prohibitions and restrictions allowing [Sally’s fiancé], not any other boyfriend or girlfriend of either *777 party at this point in time, but allowing her to spend overnights with her children with [her flaneé], or, if she decides to move in with [her flaneé], take vacations with [her flaneé] or any other type of overnight situations that the children might have at his house or at her house.
The trial court continued, finding that Sally was engaged with an articulated basis for not immediately marrying,[1] that Sally was credible in her description of the loving, caring relationship with her flaneé and that the children care about her flaneé and are close to his children. The trial court also found it to be beneficial to the children to have their mother in a committed, stable relationship that provides her emotional benefits and her family financial benefits. Finally, the trial court noted that the children were older and, since Sally’s flaneé had been staying overnight at times, as well as vacationing with the children, this would not be shocking or new to them.
Based on those reasons, the trial court entered judgment lifting the restrictions of the consent judgment that would prevent Sally’s flaneé from babysitting the children or staying overnight with Sally when the children are present. The trial court specified that the restriction was lifted only as to Sally’s flaneé and would remain in effect as to any other boyfriends or girlfriends of either party. Randy now appeals, challenging both the trial | ¿court's overruling of his objection of no cause of action and the trial court’s decision to lift the restriction as to Sally’s flaneé.
DISCUSSION
Each child custody case must be viewed in light of its own particular facts and circumstances, with the paramount goal of reaching a decision that is in the best interests of the children. Givens v. Givens, 10-0680 (La.App. 1 Cir. 12/22/10), 53 So.3d 720, 726. The trial court is in the best position to ascertain the best interests of the children given the unique circumstances presented, therefore its determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Elliott v. Elliott, 05-0181 (La.App. 1 Cir. 5/11/05), 916 So.2d 221, 226, writ denied, 05-1547 (La.7/12/05), 905 So.2d 293.
In this case, the custody judgment governing the parties and their children is a non-considered decree, meaning that it was entered by stipulation or consent of the parties without the trial court receiving evidence as to parental fitness. See Elliott v. Elliott, 10-0755 (La.App. 1 Cir. 9/10/10), 49 So.3d 407, 412, writ denied, 10-2260 (La.10/27/10), 48 So.3d 1088. A party seeking modification of a consent decree must prove, and the trial court must find, that there has been a change in circumstances materially affecting the welfare of the children since the custody decree was entered and that the proposed modification is in the best interests of the children.[2] Elliott, 49 So.3d at 413. An appellate court cannot set aside a trial court’s factual findings unless, after re *778 viewing the record in its entirety, ¡ ñit determines that a reasonable factual basis does not exist for the finding and that the trial court was clearly wrong or manifestly erroneous. See Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993).
In her rule to modify, Sally alleged that she had been in a long-term relationship and had become engaged to her fiancé and that he was an integral part of her children’s lives. She further alleged that removal of the restriction was in the children’s best interests. We do not find that a parent’s engagement, per se, constitutes a change in circumstances materially affecting the welfare of the children. However, given the circumstances and considering all of the allegations of the petition as true, we cannot say that the trial court erred in concluding that Sally stated a cause of action so as to entitle her to a hearing on the merits of her proposed modification of the consent decree.
At the hearing on the merits of Sally’s rule to modify, Sally testified that since entry of the consent judgment (nearly three years prior to the hearing), her relationship with her fiancé had significantly progressed and that they had become engaged approximately one year prior to the hearing and since then, had “pretty much lived as a family.” While this may constitute a change of circumstances, Sally’s burden on the rule to modify is to show that there is a material change in circumstances affecting the welfare of the children. See Bonnecarrere v. Bonnecarrere, 09-1647 (La.App. 1 Cir. 4/14/10), 37 So.3d 1038, 1044, writ denied, 10-1639 (La.8/11/10), 42 So.3d 381. Sally presented no evidence to support a finding that the children’s welfare is affected by her engagement. Compare Bonnecarrere, 37 So.3d at 1044.[3] Absent such, Sally did not meet her burden in seeking modification of the consent decree.
Even if we were convinced that Sally presented sufficient evidence of a material change in circumstances affecting the welfare of the children, we could not agree that lifting the restriction is in the best interests of the children. In determining the best interests of the children, courts must consider all relevant factors, including the following non-exclusive list set forth in Louisiana Civil Code Annotated article 134:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
*779 (6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
1 R(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court found lifting the restriction to be in the children’s best interests because “there are significant benefits that [Sally] would have” and because it was beneficial to the children to have their mother in a committed, stable relationship that provides her with emotional benefits and her family with financial benefits.
The paramount goal in custody cases is reaching a decision in the best interests of the children. Givens, 53 So.3d at 726. The only real argument that lifting the restriction would be in the children’s best interests is that Sally’s fiancé would be part of their family environment. However, the restriction does not prohibit the children from spending time with Sally’s flaneé and, Sally admits, the children have bonded with her fiancé during time they spend together, rather than because he has spent the night at her home. Sally testified that “it would be weird with him going home every night.” However, the restriction mandating that situation was imposed by the parties themselves, and Sally admits that she believed it to be in her children’s best interests at the time of the consent judgment. The record simply does not support a finding that having Sally’s fiancé babysit the ^children alone or spend the night with Sally while the children are present is in the children’s best interests.[4]
Courts of this state have recognized that an award of custody is not a tool to regulate human behavior. See Montgomery v. Marcantel, 591 So.2d 1272, 1274 (La.App. 3 Cir.1991). Additionally, societal attitudes toward unmarried couples living together have changed over the years. See Montgomery, 591 So.2d at 1274 (recognizing “that in today’s society conduct which would once have been scandalous is acceptable or, perhaps, even the norm”); compare Lozes v. Lozes, 542 So.2d 603, 605 (La.App. 5 Cir.1989) (stating “[t]he courts of this state have consistently recognized that living together, without benefit of marriage, in a home where young children are present is immoral and necessarily has a detrimental effect on a child’s moral upbringing”). Sally and Randy chose to include the restriction in the consent judgment, which invokes the requirement of proving a change in circumstances materially affecting the welfare of the children and that the proposed change is in the best interests of the children before the consent judgment can be modified to lift the restriction. Moreover, the rights of any parent are always subservient to the best interests of the children. Becnel v. Becnel, 98-593 (La.App. 5 Cir. 3/25/99), 732 So.2d 589, 592, writ denied, 99-1165 (La.6/4/99), 744 So.2d 630.
*780 CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed insofar as it lifts the restrictions in the consent judgment that prevent Sally’s fiancé from babysitting the parties’ children or spending the night while the [ inchildren are present. Costs of this appeal are assessed to Sally Lynn Kingston.
REVERSED.

. Sally testified that a substantial judgment had been rendered against her fiancé and they have been advised that they should not marry pending the outcome of continued litigation for financial reasons.

. Although Sally is not seeking to modify the time that the children spend in the physical custody of each parent, she is seeking to modify the consent judgment’s terms under which that physical custody can be exercised, therefore her burden of proof is to show a change in circumstances materially affecting the children and that the change is in the children's best interests. See Cook v. Cook, 42,587 (La.App. 2 Cir. 9/19/07), 965 So.2d 630, 637, reversed on other grounds, 07-2091 (La. 12/14/07), 970 So.2d 960.

. We note that Sally has suggested that the fact that her fiance has been staying overnight constitutes a change in circumstances such that prohibiting him from doing so would affect their family dynamic. While courts have recognized that a party’s repeated violation of a custody judgment can constitute a change in circumstances warranting modification, we find no jurisprudential support for doing so in the violator’s favor. See Cook v. Cook, 07-2091 (La. 12/14/07), 970 So.2d 960, 963. Moreover, the trial court made no finding that Randy consented to changing the consent judgment to allow Sally's fiancé to spend the night, and the record does not support such a finding.

. The focus of the hearing before the trial court was the overnight visitation and not babysitting. Sally did not present evidence regarding a need for the fiancé babysitting the children so as to constitute a material change in circumstances in that regard.