NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-219

JOSEPH ALBERT TARVER

VERSUS

MELISSA WADDELL TARVER

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 46683/46702
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

REVERSED.

**Scott B. McLemore**
**McLemore Law Firm**
**200 Advocate Row, Suite B**
**Vidalia, LA 71373**
**(318) 336-9189**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Melissa Waddell Tarver**

**Carol S. Loy**
**111 Serio Boulevard**
**Ferriday, LA 71334**
**(318) 757-4545**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Joseph Albert Tarver**

**EZELL, Judge.**

Melissa Tarver appeals a trial court judgment which modified a stipulated custody judgment by designating her ex-husband, Joseph Tarver, as the domiciliary parent of their two daughters. For the following reasons, we reverse the judgment of the trial court.

## FACTS

During their marriage, Melissa and Joseph had two daughters, Taylor and Isabella. Taylor was born on December 19, 2006, and Isabella was born on December 7, 2009. On September 9, 2011, Joseph filed a petition for divorce. On December 14, 2011, the parties entered into a stipulated judgment. Subsequently, a new stipulated judgment was entered into on September 19, 2013. Pursuant to this judgment, the parties were awarded joint custody of the children. Melissa was designated the domiciliary parent, and Joseph was awarded visitation on all the days he was off from work.

Thereafter, Joseph filed a rule to show cause requesting a modification of custody and support. Melissa then filed a rule for contempt and to modify support. Prior to the hearing on August 25, 2014, the rule for contempt and to modify support was withdrawn.

Testimony and evidence was introduced at the trial. Following the trial, the trial judge allowed the parties ten days to file briefs. On October 28, 2014, the trial judge designated Joseph as the domiciliary parent, allowing Melissa visitation on the first and third weekends of each month and alternating holidays. No mention of child support was made in the judgment. Following a denial of her motion for new trial, Melissa filed the present appeal.

**CHANGE OF DOMICILARY CUSTODY**

The parties do not dispute that the case involves review of an original custody decree pursuant to a stipulated judgment that was entered into on September 19, 2013. The law is clear that a party seeking a modification of a stipulated judgment has a two-prong burden of proof that he must establish before a modification will take place. First, the party must prove that there has been a material change of circumstances. *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731. Second, the party must prove that the proposed modification is in the best interests of the children. *Id*. The party must establish both prongs of the *Evans* standard. *Montalvo v. Montalvo*, 02-1303 (La.App. 3 Cir. 4/17/03), 854 So.2d 902. "If the first prong of the test is not met and a material change in circumstances is not shown, the inquiry ends, and there is no basis for altering the physical custody decree." *Lunney v. Lunney*, 11-1891, p. 4 (La.App. 1 Cir. 2/10/12), 91 So.3d 350, 353, *writ denied*, 12-610 (La. 4/4/12), 85 So.3d 130. "An appellate court cannot set aside a trial court's factual findings in a child custody matter unless, after reviewing the record in its entirety, it determines that reasonable factual basis does not exist for the finding and that the trial court was clearly wrong or manifestly erroneous." *Kingston v. Kingston*, 11-1629, pp. 5-6 (La.App. 1 Cir. 12/21/11), 80 So.3d 774, 777-78.

Material Change of Circumstances

In reviewing custody cases where the courts found a material change of circumstances sufficient to alter the custody plan, we observe that the material change of circumstances "must be of a substantial and continuing nature to make the terms of the initial decree unreasonable." LINDA D. ELROD, CHILD CUSTODY PRACTICE AND PROCEDURE § 17:4 (database updated 2015).

Prior to trial, Joseph argued that a material change in circumstances occurred because Melissa had not given him Taylor's report card and Taylor experienced a substantial amount of absences from school. Joseph also complained that the children came to visit him in clothes that were too small and that they were not clean and well kept.

At the conclusion of the trial, the trial judge stated:

It seems like the gist of this conversation was the schooling. I don't see that there was a whole lot of controversy about any other issues, and it seemed like on the face of it, there was deficiency with the schooling situation, but [Melissa's attorney] flushed it out with the explanations of medical things and stuff like that.

. . . .

I don't feel that the gravity of the situation reaches a point to where there should be a change in the situation at this time. . . . [T]he Court will view in the future -- if the school attendancy [sic] continues to be -- that is a fairly deficit, 16 absences and several other, but this [was] rehabilitated by the school authorities who documented the evidence, but if that tendency continues this situation may be reviewed. I don't feel it reaches the level, as I indicated, at this point to make a change. The children are situated in basically their paternal neighborhood, Mr. Tarver's neighborhood in close proximity and hopefully there can be a lot of interaction between the children and their paternal relatives and this school situation can be straightened out and everybody can work for the benefit of these children . . . .

The trial judge received the briefs within ten days and then issued the following written reasons two months later, finding that there was a material change in circumstances:

First, there has been a documented record of excessive absenteeism (16 missed days of school) for the minor child, Taylor Nicole Tarver (hereinafter referred to sometimes as "Taylor"). Although some medical excuses were offered into evidence for these absences, it is noted that while Taylor was in the care of her father, she did not miss any school. Further, it is noted that the younger child, Isabella Rose Tarver (hereinafter referred to sometimes as "Isabella") is currently home schooled by her mother. It is the opinion of this Court that the educational needs of "Isabella" would be better served

3

by having her attend preschool at Tensas Academy, which the father intends to do.

Second, if the father has custody of Taylor and Isabella, they would have the companionship of the children of Joseph's current wife, a factor which this court deems to be a positive one.

Third, evidence was introduced to this Court that although Joseph's family lives in close proximity to Melissa, they are not allowed to see Taylor and Isabella on a regular basis, a fact which this Court feels is not in the best interest[s] of the children.

Fourth, Melissa does not encourage the children to attend church with either herself or Joseph's family, a factor which mitigates against continued custody being maintained with Melissa. Joseph has testified that if given custody he will insure that the children are in church on a regular basis and in fact does so when the children are with him.

Fifth, this Court is convinced that the children will live in a more stable home environment and will have a more defined schedule with Joseph than with Melissa.

Sixth, this Court is also convinced that the grooming habits of the children will be much better with Joseph than with Melissa.

Seventh, and one of the main circumstances operating against custody with Melissa, is the continued "live-in" arrangement which Melissa has with her current [fiancé] in the presence of the children, which arrangement apparently has manifested itself over a period of time.

Although not necessarily a material change in circumstances, this Court does note with approval the stable work schedule and stable home environment of Joseph.

We first observe that many of the reasons the trial judge used in finding a material change in circumstances, were not material changes in circumstances because these circumstances existed when the last stipulated judgment was entered into on September 19, 2013. Concerning the trial judge's greatest concern, Melissa testified that she and her fiancé had been engaged and living together for two years. They had been in a relationship for a total of four years. Joseph testified that he and his wife, Andrea, got married in August 2012, also before the parties entered

4

into the stipulated judgment. Melissa and her fiancé moved into the marital domicile in September 2013 with the girls and her older son from a previous relationship. This home is down the road from Joseph's family. Joseph and his wife lived here previously but moved thirty minutes away to St. Joseph. Joseph and his wife live in a house with their new baby and his wife's two children, a son and daughter, eight and six years old respectively, from a previous marriage. Andrea's older son with her first husband, eighteen years old at the time of trial, moved out to get a job. Testimony revealed he was homeschooled since he was expelled from school in the ninth grade and was ready to leave and get a job. Joseph's and Melissa's home lives are exactly the same as they were in September 2013, except for the addition of the new baby.

We do not find that the testimony established that Joseph's home offered a more stable home environment since the stipulated custody judgment. Joseph testified the girls have a set bedtime schedule at his house and that when he has visitation with the girls, they are so tired that he cannot get them out of bed. He also testified that Taylor has fallen asleep in the car ride to school. We note that this is after she has spent the night at his house. Melissa testified that during the school year, Taylor goes to bed at 8:30, and during the summer, she goes to bed at 10:00. Melissa stated that the girls stay on schedule "pretty much."

Joseph was also concerned that when Isabella comes for visitation, she is in clothes that don't fit and appear unkempt. He testified he sends her back in those clothes because he is scared he will not get back the clothes he sends. Joseph's mother, Brenda Tarver, also testified. She babysits for Melissa occasionally and testified that girls were always clean, but their clothes did not fit sometimes. She

5

assumed that Melissa was worried she may not get her clothes back, which is also why Joseph testified that he sent Isabella back in the smaller clothing.

Angela Johnson, who has children at Delta Charter School, testified that Melissa participates in a lot of the events at school and that the children present very nicely. Christy Porter also testified that she participates in a lot of activities with Melissa and that she takes very good care of her children.

While we agree with the trial judge that there is a positive factor that the girls will have the benefit of the companionship of Joseph's present wife, Andrea, it also presents a negative factor in that the girls will no longer have the constant care of their own mother. The trial judge based his decision on the testimony of Joseph, his mother, and Andrea's mother. Andrea did not testify at the trial due to the fact that she had just given birth to the new baby. At the time of the stipulated judgment, Andrea and Joseph were newly married. Again, none of the facts of the parents' current living arrangements are any different. While Andrea and Joseph just had a new baby, this will only add to the number of children that Andrea will have to care for if the girls live with them; five children in all. At Melissa's house, it is just the girls and older son.

Melissa testified that she and the girls occasionally attend church. However, there is no indication in the record that the parents agreed that children would regularly attend church or that they were regularly attending church when the stipulated judgment was signed.

In *Montalvo*, 854 So.2d at 908, this court quoted Justice Weimer's concurrence when he was a judge on the first circuit in *Schaffer v. Shaffer*, 00-1251, p. 2 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 360, *writ denied*, 00-2838 (La. 11/13/00), 774 So.2d 151, wherein he stated: "'Life changes may occur, but if the

changes do not have an effect on the welfare of the child, then no change in custody is justified.'" The only life change that has occurred since the stipulated judgment is the birth of Andrea's and Joseph's new baby. We do not see that this life change has materially impacted the girls' welfare.

Finally, we do not find that Taylor's sixteen absences from school is a material change in circumstances. Taylor had started attending Delta Charter School based on the decision of both parents. At the time of the hearing, Melissa testified that Taylor missed sixteen days of school the last year while she was in first grade. Melissa testified that she missed school due to illness and teeth problems. Melissa also agreed that Taylor was checked out of school on a number of occasions for doctor's appointments, to watch her brother play football, and for a birthday celebration.

Bobbie Pearson, the administrative secretary at Delta Charter, testified that on average children do not miss sixteen days of school each year unless they are sick. Monica Miller, the administrative assistant director at Delta Charter School, taught Taylor in first grade. Monica testified that Taylor was sick a lot. Monica even requested that Taylor go home on some days because she came to school sick. Monica did not find that a large amount of school absences was an issue when dealing with a sickly child. Monica further testified that Melissa was always forthcoming about why she was checking Taylor out early.

Melissa even approached Monica about tutoring Taylor at the beginning of the school year, and after observing Taylor for a few weeks, Monica decided that Taylor needed help in reading, so she began tutoring Taylor. Melissa testified that Taylor finished the year with all A's and B's and a C in reading. We find that the

7

record sufficiently supports Melissa's claims that there were reasons for Taylor's absences from school.

While Joseph indicated that he had concerns because Melissa did not give him Taylor's report card, Monica testified that any parent can call the office to request a copy of the report card. Joseph agreed that he never asked the school for a copy of Taylor's report card.

Although, Isabella had reached pre-school age since the stipulated judgment, Melissa explained that there is no pre-school program at Delta Charter School, so she home schools Isabella with a Mickey Mouse computer program recommended to her by Monica at Delta Charter. Melissa testified that she works every morning with Isabella after she drops Taylor off at school.

After reviewing the testimony and evidence in the record, we find that the trial judge committed manifest error when he found a material change of circumstances. For some unknown reason, the trial judge initially determined that there was no material change in circumstances immediately following the trial but then changed his mind two months after the hearing. It appears that when he issued his reasons for judgment, the trial judge made more of an initial considered determination of custody instead of determining whether there had been a change in circumstances since the last stipulated judgment, since his decision was based on a majority of the factors that had not changed since the stipulated judgment.

For the above reasons, we find that the trial judge erred in finding that Joseph met his burden of proving that were material changes in circumstances affecting the welfare of the children since the stipulated custody judgment was entered. Therefore, the trial judge erred by undertaking a best-interest analysis and

in modifying the original custody decree.  The judgment of the trial court is reversed.  Costs of this appeal are assessed to Joseph Tarver.

**REVERSED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal.  Rule 2–16.3.