HOLDRIDGE, J.
In this child custody dispute, the mother appeals from a trial court judgment awarding the father sole custody of the parties' minor child. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Kevin Harrell and Cynthia Harrell were married in February 1989. Three children were born of the marriage: daughter Jessica Harrell (born in 1993), daughter Lindsey Harrell (born in 1995), and daughter C.H. (born in 2004).[1] In December of 2012, Cynthia allegedly attempted suicide resulting in her admittance at Glenwood Regional Medical Center in Monroe, Louisiana. She was released on December 13, 2012.[2] As a result of this incident, Kevin filed for a temporary protective order against Cynthia[3] wherein the trial court granted Kevin temporary custody of Lindsey Harrell, who was a minor at the time, and C.H. The temporary protective order was later dismissed by the trial court. Subsequently, Kevin filed a Petition for Divorce on January 3, 2013.
Due to the nature of the relationship between Cynthia and Kevin pending their divorce, the parties entered into a stipulated judgment on January 25, 2013, agreeing to share equal custody of C.H. and that the parties would complete a custody evaluation with Dr. Jesse Lambert, a licensed clinical psychologist. As a result of the custody evaluation recommendation by Dr. Lambert,[4] the parties entered into another stipulated judgment on March 1, 2013, awarding joint shared custody of C.H. with both parents being designated as co-domiciliary parents.[5] The trial court *707 rendered a judgment of divorce on February 28, 2014.
On July 28, 2015, Cynthia filed a rule for ex parte custody seeking sole custody of C.H. alleging that she was not doing well in school and that her relationship with Kevin was deteriorating. The trial court held a hearing on Cynthia's motion on August 28, 2015. Cynthia submitted an affidavit stating that C.H.'s mental health had deteriorated "to the point where she was threatening to severely hurt herself if she had to go see her father. She was hospitalized by [a] mental health professional on July 22, 2015."[6] The affidavit further alleged that C.H.'s treating psychiatrist, Dr. Megan Crochet, recommended that Cynthia seek an emergency custody order so that C.H. could be released to Cynthia. At the hearing, the parties entered into a stipulated judgment, agreeing to a psychological evaluation to be performed by Dr. Alan Taylor,[7] a forensic psychologist, and agreeing to not change the current custody arrangement of C.H. The trial court signed a judgment on September 16, 2015 in accordance with the stipulated judgment.
The trial court issued an Order on February 11, 2016, maintaining the current physical custody of C.H. and ordering that Cynthia's visitation with C.H. continue; however, should Cynthia become unable to control her actions around C.H. to the extent that C.H. began missing school or had any suicidal ideations, visitation would stop. On February 29, 2016, Dr. Taylor provided the parties and the trial court with a written report that contained his recommendation regarding the custody assessment of C.H. Dr. Taylor found that this was a high conflict case and ultimately recommended that the best arrangement for C.H. was to spend the school week primarily with Kevin and alternate weekends with Cynthia.
On March 8, 2016, Kevin filed a rule to modify custody, requesting that the recommendation set forth in the psychological evaluation by Dr. Taylor be implemented immediately in order to avoid further harm to C.H. On March 14, 2016, the trial court held a hearing on Kevin's rule to modify custody and the parties stipulated that C.H. would receive counseling for a week with the counselor chosen by Dr. Taylor in order for C.H. to be monitored pending the trial set for April 1, 2016.
On April 1, 2016, the parties stipulated to a modification of their joint custody of C.H., designating Kevin as the domiciliary parent,[8] and changing the physical custody of C.H. with Cynthia to every other weekend from Friday after school until Sunday *708 at 6:00 p.m.[9] The stipulated judgment further ordered that C.H. "shall attend counseling with Marcia Cox[10] if available and if not, a counselor approved by Dr. ... Taylor."
Following the hearing on April 1, 2016, Cynthia, C.H., and family members abruptly entered the Ascension Parish clerk's office where Kevin was located, waiting for the judgment to be signed, and began yelling profanity. The dispute resulted in the Ascension Parish Sheriff's Office responding to the incident. While the deputies were taking statements from the witnesses, C.H. allegedly claimed that "she just wanted everyone to be happy and that she would kill herself if she could not live with her mother." This incident was captured on video and placed on social media by Cynthia. As a result of C.H.'s suicidal statement, the sheriff's office transported C.H. to the Baton Rouge General for a physician's emergency certificate (PEC), pursuant to La. R.S. 28:53. C.H.'s fragile mental state resulted in her being admitted to Brentwood Hospital in Shreveport, Louisiana and then San Marcos Treatment Center in Texas for further inpatient treatment.[11]
On April 14, 2016, Kevin filed a rule to modify, requesting a suspension of all contact between Cynthia and C.H. until a further order from the trial court. In his rule to modify, Kevin requested that Cynthia, her family, or agents be suspended from contacting C.H. or posting on social media anything about C.H. On April 29, 2016, Kevin filed a supplemental and amended rule to modify with an ex parte order, alleging that the ongoing contact between Cynthia and C.H. had extremely disrupted C.H.'s treatment, which was detrimental to her progress. While C.H. was at San Marcos for treatment, Cynthia and her two daughters allegedly called C.H. and told her not to cooperate with the treatment and remain silent. Kevin further requested from the trial court that all contact between C.H. and Cynthia immediately cease until C.H. made significant improvement and until Cynthia received some form of mental health treatment. The ex parte order was denied by the trial court and the matter was set for hearing on May 25, 2016.
Kevin filed a second supplemental and amended rule to modify custody, seeking sole custody of C.H. and requesting that child support to be set. In his second supplemental and amended rule to modify custody of C.H., Kevin prayed that there be limited contact between C.H. and Cynthia and minimal visitation supervised by a licensed social worker. Kevin further requested that Cynthia obtain specialized treatment.
On September 11, 2016, Cynthia fax-filed to the trial court a motion to compel compliance with subpoena duces tecum and rule to show cause for contempt and independent custody evaluation. On October 28, 2016, the trial court held a hearing on Cynthia's motion and after all the evidence was submitted, it made an oral ruling, granting the motion to compel Dr. Taylor to comply with the subpoena duces tecum, ordering him to produce to the trial court any evidence in his record that may be harmful to C.H. for an in camera inspection. The trial court further ordered that Dr. Taylor produce the remainder of *709 his records regarding the evaluation to Cynthia. The judgment was signed by the trial court on November 17, 2016.
The trial on Kevin's rule to modify custody was held on November 15 and 16 of 2016. After multiple experts testified regarding their findings and recommendations, and numerous fact witnesses testified to the various faults and attributes of the parties, the trial court rendered judgment awarding sole custody of C.H. to Kevin on December 27, 2016. The trial court issued reasons for judgment on January 3, 2017. From this judgment, Cynthia devolutivley appeals.[12]
APPLICABLE LAW
The court shall award custody in accordance with the best interest of the child. La. C.C. art. 131. Indeed, the best interest of the child is the sole criterion to be met in making a custody award and the trial court must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child's emotional, physical, material and social well-being and health that are the court's very purpose in child custody cases; the court must protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. Hodges v. Hodges , 2015-0585 (La. 11/23/15), 181 So.3d 700, 702.
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. La. C.C. art. 132. In the absence of an agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. Id. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. State in the Interest of J, K, and T, 582 So.2d 269, 275 (La. App. 1 Cir. 1991), writ denied, 583 So.2d 1145 (La. 1991). A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. La. C.C. art. 136(A).
In determining the best interest of the child, the court shall consider all relevant factors, and such factors may include those enumerated in La. C.C. art. 134.[13] Every child custody case is to be *710 viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Whitmore v. Stamps, 2012-2069 (La. App. 1 Cir. 6/7/13), 2013 WL 2490337, writ denied, 2013-1539 (La. 7/24/13), 120 So.3d 243. Because of the trial court's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court. A trial court's determination regarding child custody will not be disturbed absent a clear abuse of discretion. Id.
DISCUSSION
As a preliminary matter, we must first discuss Kevin's "Motion for Partial Dismissal of Appeal and for Partial Suspension of Briefing Delays." In his motion, Kevin alleges that because Cynthia only appealed the January 5, 2017 judgment, all assignments of error relating to the November 17, 2016 judgment are not appealable because all time delays have run pursuant to La. C.C.P. arts. 2083 and 2087. However, when an unrestricted appeal is taken from a final judgment determinative of the merits, the appellant is generally entitled to seek review of all adverse interlocutory judgments prejudicial to him in addition to review of the final judgment. See Wesley v. David , 2013-1500 (La. App. 1 Cir. 2/18/14), 2014 WL 651784 n.5 (unpublished). Because the November 17, 2016 interlocutory judgment relates to the January 5, 2017 judgment, it is a final appealable judgment. Therefore, Kevin's motion is denied.
A. Modification of Custody
Cynthia's main contention on appeal is that the trial court erred in its modification of the custody of C.H. Specifically, Cynthia alleges that the trial court erred in determining that Kevin carried his burden of proving his entitlement to an award of sole custody of C.H. The burden of proof on a party who wishes to modify a prior permanent custody award depends on the nature of that prior award.[14] If the prior permanent custody award is a stipulated judgment, which typically is one resulting from the parties' consent to a particular custodial arrangement, a party seeking modification of the prior permanent custody award must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. Beene v. Beene, 43,845 (La. App. 2 Cir. 10/22/08), 997 So.2d 169, 172 ; see also Richard v. Richard, 2009-0299 (La. App. 1 Cir. 6/12/09), 20 So.3d 1061, 1066. In this case, the underlying custody decree is the April 1, 2016 stipulated joint custody decree that was reduced to writing and signed by the trial court on April 26, 2016. In order to modify *711 that custody plan or decree, as requested by Kevin, he had to prove, and the trial court had to find, that: (1) a change in circumstances materially affecting the welfare of the child had occurred since the rendition of the April 26, 2016, joint custody implementation plan and (2) the modification proposed by Kevin was in the best interest of the child-i.e. , Kevin having sole custody.
(1) Material Change in Circumstances
In his rule to modify, Kevin alleged a material change in circumstances had occurred, warranting a change in the parties' prior custodial arrangement. Specifically, Kevin stated that the incident that occurred at the courthouse after he was designated the domiciliary parent of C.H. warranted a modification of custody, as this evidenced a harmful atmosphere for C.H. To further support his position, Kevin stated in his supplemental and amended rule to modify that after C.H. began inpatient treatment, Cynthia began disrupting C.H.'s progress, and for that reason he desired to be awarded sole custody of C.H. Kevin further asked the trial court to prohibit Cynthia, her family, or agents from contacting or posting on social media anything about C.H. or any of Kevin's family members.
Since the April 26, 2016 consent judgment, C.H. has been diagnosed with ADHD, has earned failing grades, and has displayed little interest in school as a result of this ongoing conflict. C.H. has also been placed in three different inpatient treatment facilities as a result of the incident that took place at the court house on April 1, 2016. In its reasons for judgment, the trial court stated that "[t]he post-stipulation events of April 1, 2016 establish that a material change in circumstances has taken place. Specifically, the suicidal actions of [C.H.] in conjunction with the historic actions of [Cynthia] ... exacerbated the circumstances."
Having reviewed the evidence, we cannot say that the trial court was clearly wrong in finding that Kevin had established a material change in circumstances based on the evidence presented. Even Cynthia states in her "Proposed Findings of Fact and Rulings of Law" that "[t]he post-stipulation events of April 1 establish that a material change in circumstances took place." This court agrees with both parties that a material change in circumstance is shown in the instant matter and justifies a modification of the existing consent decree. See Kingston v. Kingston , (La. App. 1 Cir. 12/21/11), 80 So.3d 774, 778. Therefore, we find that the trial court was correct in determining that a material change of circumstances existed to modify the custody of C.H.
(2) Best Interest of the Child
In awarding sole custody to Kevin, the trial court reviewed each of the factors under La. C.C. art. 134 and concluded that the clear and convincing evidence revealed that sole custody was in the best interest of C.H. In so concluding, the trial court heard Dr. Taylor's testimony, which included his recommendation for the custody arrangement of C.H. The following colloquy occurred between Dr. Taylor and counsel during trial:
A. ... there is an almost symbiotic relationship between [Cynthia] and [C.H.] here where there aren't clear boundaries as to who is who. And then the divorce process itself has sort of turned into [a] grand theatre in terms of this ongoing kind of competing issues about the need to try to preserve the family, but in a divorce the task is to separate out, the parents to separate out, establish their own positions but remain parents to the child and work together so that the divorce of the parents *712 doesn't mean divorce from a child. And a lot of times in high conflict divorces that gets confused.
* * * * *
A. ... Cynthia cannot observe or recognize what might be in the best interest of her child who repeatedly says I want to get out of this, I want to stop this, I want to see my mother, I want to see my dad, but I want them to settle it.
* * * * *
Q. So ... are you changing your recommendation that you originally made in February?
A. Well ... [t]o me there are two possible ways to go; one is untried, the other one has been tried for a while now and here we are. So the first one was to have during the weeks [C.H.] be primarily with dad, with mom every other weekend, do some other subdivision of time at another time.
Q. And that one didn't work?
A. [I]f that was working[,] we probably would not be here. It held together about two or three weeks. ... The other option is to vest ... full authority on [Kevin's] side, maybe still use the same physical arrangement. I don't see any other ways. Those are the two ways to me to have some chance of working.
* * * * *
Q. You no longer recommend a joint custody, is that correct?
A. I find it hard to believe, based on what's going on ... that [it is] possible.
In its reasons for judgment, the trial court stated that Dr. Taylor's compelling testimony revealed that two options were available to resolve the custody issue in the instant matter. The trial court determined that under the totality of the circumstance, the best option was to vest full authority with Kevin and keep the physical arrangement the same. The trial court stated in its reasons for judgment that this option was "the only way to strengthen the boundaries enough to foster the best environment for [C.H.]"
Additionally, the trial court determined from the evidence and testimony presented by Dr. Taylor that "there was a clear distinction between the capabilities and emotional functioning evidenced by Cynthia ... and Kevin" warranting a modification in the custody of C.H. In its reasons for judgment, the trial court, stated, in pertinent part:
Dr. Taylor reports that Cynthia is demonstrating a well-established, chronic, long-term personality disorder which is subject to periods of acute exacerbation which require outside intervention as an additional complicating factor. Moreover, her emotional difficulties extend back to childhood and are not likely to significantly change. Though Dr. James Logan, expert in Psychology who performs duties in Forensic Psychology, testified that Dr. Taylor's diagnosis of Cynthia was patently incorrect based on his interpretation of Cynthia's ... (MMPI) results, he further testified that he was not in a position to make any professional diagnosis on Cynthia. More importantly, Dr. Taylor testified that his diagnosis of Cynthia was based on the entirety that he had at his disposal, a tremendous amount of clinical data. He further testified that the MMPI was simply one of many tools relied upon to come to his conclusions. The Court's observation of Cynthia's antics in the courtroom throughout the two day trial further supported Dr. Taylor's diagnosis. The evidence establishes that she is currently considerably enmeshed with her daughter [C.H.] and is unable to see her child as a separate individual in her own right. This makes it extremely difficult for Cynthia to consider [C.H.'s]
*713 needs or to accurately assess her behaviors. Cynthia is unable to keep the spillover of her own emotional experiences from affecting [C.H.], who is highly susceptible to this influence.
Dr. Taylor reports that although Kevin ... has his own weaknesses as an adult and as a parent, he does not manifest a significant psychological disorder. Dr. Taylor testified that he does not believe that Kevin has a desire to limit and control custodial time. In terms of his ability to take care of himself as an adult, he has been responsible for working, providing financial support, and functioning as a parent. Since the divorce, Kevin has married Doren Harrell in July, 2015, and they have since been residing together in Donaldsonville, Louisiana. Dr. Taylor reported that there were more glimpses of a normal eleven-year-old during Kevin['s] ... family visit, and that [C.H.] was calm and more polite in Kevin's presence. The totality of the evidence indicates clearly and convincingly that Kevin ... is currently more capable of functioning in a parental role with [C.H.]; therefore, a sole custody arrangement in favor of Kevin ... is in the best interest of the minor, [C.H.]
Considering the totality of the circumstances and a weighing of the evidence, we conclude that the record amply supports the trial court's finding that Kevin proved, by clear and convincing evidence, that sole custody was in the best interest of C.H. The evidence reveals that the parties continued to create a hostile and stressful environment for C.H. with continued court proceedings. The evidence further reveals that the previous custody arrangement, joint custody with Kevin designated as the domiciliary parent, was not serving C.H.'s best interest, as there was a continued emotional upheaval and anxiety from Cynthia, which led to constant litigation, disagreements, and consternation between Cynthia and Kevin. See Lawrence v. Lawrence , 49,373 (La. App. 2 Cir. 8/13/14), 147 So.3d 821, 827. Accordingly, we find that the trial court was correct in finding that it was in the best interest of C.H. to award sole custody to Kevin.
(3) Expert Testimony
Cynthia argues that the trial court erred in relying solely on Dr. Taylor's expert opinion in awarding sole custody to Kevin. In sum, Cynthia argues that the trial court was precluded from awarding sole custody to Kevin when there was controverting expert opinion, such as that of Ms. Cox and Dr. Logan.
Dr. Taylor was appointed by the trial court to evaluate the parties and prepare a custody evaluation. Dr. Taylor, who was qualified as an expert in the field of forensic psychology, testified at length about the testing process and his interviews with the parties. Dr. Taylor testified that based on his assessment of the parties, he recommended that Kevin have sole custody of C.H. Dr. Logan was also accepted as an expert in the field of forensic psychology by the trial court. Dr. Logan testified as to mistakes Dr. Taylor made in his custody assessment of the parties. Dr. Logan found that Dr. Taylor's interpretation of the MMPI-2 was incorrect and that Cynthia did not have a personality disorder. Additionally, Ms. Cox, the court appointed therapist for C.H., testified that C.H. wished to live with Cynthia. However, Ms. Cox also testified that C.H. was not of the age to make decisions for herself, as she was immature and unable to understand the consequences of her decisions.
The record reflects that the trial court accepted and found more credible the expert testimony, evaluation report, and recommendation given by Dr. Taylor in rendering its judgment. In its reasons for *714 judgment, the trial court stated, in pertinent part:
Dr. Taylor has concluded that it is not possible or desirable to attempt a plan of joint physical custody which requires ongoing communication and cooperation between the parents when the conflict and stress level is as high as in this case. Dr. Taylor's report and testimony provide that the divorce put [C.H.] in the midst of a severe adjustment disorder, in which she has been displaying many of [Cynthia's] symptoms.
With respect to the testimony of expert witnesses in child custody hearings, the Louisiana Supreme Court stated as follows:
Expert witnesses are intended to "assist the trier of fact" in understanding the evidence or in the determination of a fact in issue. Without question, the opinion of an expert may be given great weight by a trial court in its determination of the psychological well-being of a child or parent. However, this does not mean that the expert has usurped the authority of the trial court in determining the key issue of "best interest of the child." As we [have] stated ... this decision is based on all the evidence and testimony presented to the fact-finder. It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Further, a trial judge may substitute his/her own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. [Internal citations omitted.]
C.M.J. v. L.M.C., 2014-1119 (La. 10/15/14), 156 So.3d 16, 31.
Thus, Dr. Taylor's testimony was but some of the evidence available for the trial court's consideration, and the trial court was entitled to disregard that testimony, either in whole or in part. Therefore, it was not error for the trial court to adopt Dr. Taylor's recommendation, as the court-appointed expert.[15] See Moreau v. Moreau , 2015-0564 (La. App. 4 Cir. 11/18/15), 179 So.3d 819, 824. Based upon our review of the record and the trial court's written reasons for judgment, contrary to Cynthia's assertions on appeal, we cannot say that the trial court abused its discretion in considering the testimony and recommendation of Dr. Taylor in making its determination as to the best interest of C.H. See La. C.C. art. 134.
Cynthia also argues on appeal that Dr. Taylor exceed his authority as a mental health professional pursuant to La. R.S. 9:331. Specifically, Cynthia argues that Dr. Taylor's continued involvement in this matter after submitting his custody evaluation, including his involvement with the treatment teams at the inpatient facilities, was well beyond the statutory authority allowed to him by La. R.S. 9:331. Louisiana Revised Statutes 9:331 provides:
*715 A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.
The purpose of La. R.S. 9:331 is to aid the court in determining the best interest of the child. Kevin and Cynthia stipulated to the appointment of Dr. Taylor as a mental health evaluator in the instant matter to determine the best interest of C.H. Dr. Taylor's testimony revealed that he "had nothing to do with the decision to send [C.H.] to Brentwood ... [he] didn't have contact with them other than to understand that's where [C.H.] was. ... [He] did consult with San Marcos to get [C.H.] over there."
There is no provision in Louisiana law that provides that Dr. Taylor, serving as a mental health evaluator, was prohibited from communicating with the court, the parties, and the attorneys to make the necessary actions to obtain the best recommendation that was in the best interest of C.H. See Lucky v. Way , 51,706 (La. App. 2 Cir. 9/1/17), 2017 WL 3812783, writ denied, 228 So.3d 1233 (La. 10/27/17), 2017 WL 5036317. Thus, we cannot say that the trial court's evaluation of Dr. Taylor's expert testimony and determination as to C.H.'s best interest was an abuse of its great discretion.
Accordingly, we find that the trial court did not abuse its discretion in finding that Kevin proved by clear and convincing evidence that he was entitled to sole custody of C.H. The trial court was able to personally observe the parties during trial and make its own findings as to the best interest of C.H. The evidence in the record supports the trial court's granting of sole custody of C.H. to Kevin. Moreover, the trial court did not abuse its great discretion in accepting Dr. Taylor's recommendation as to the best interest of C.H.[16]
CONCLUSION
For all of the foregoing reasons, the judgment of the trial court is affirmed. Cynthia Harrell is cast with all costs of this appeal.
AFFIRMED.

In this opinion, the initials of the minor child are used to protect and maintain the privacy of the minor child involved in this proceeding. See Uniform Rules, Courts of Appeal, Rule 5-1 and Rule 5-2.

Cynthia's diagnosis was major depression, recurrent, severe, without psychotic features.

There is no record of the temporary protective order in the record.

A portion of Dr. Lambert's report is contained in the record. Dr. Lambert recommended that joint custody continue with Kevin designated as the domiciliary parent. Dr. Lambert further recommended that Cynthia participate in psychotherapy medication management and engage in individual psychotherapy to assist her in reducing her level of stress and improve her functioning.

In this stipulated judgment, the issue of custody and child support for Lindsey Harrell was waived due to her reaching the age of majority.

C.H. was sent to River Oaks Hospital in New Orleans for inpatient treatment July 22-27 of 2015 because she was threatening to hurt herself.

Leslie Todd, a clinical social worker, collaborated with Dr. Taylor in completing the Harrell's custody assessment.

A distinction exists between the physical sharing of custody of the children and the designation of a parent to exercise legal custody-the domiciliary parent. Explaining this distinction, the Louisiana Supreme Court in Evans v. Lungrin, 97-0541, (La. 2/6/98), 708 So.2d 731, 737 stated:
The term "custody" is usually broken down into two components: physical or "actual" custody and legal custody. The typical joint custody plan will allocate time periods for physical custody between parents so as to promote a sharing of the care and custody of the child in such a way as to ensure the child of frequent and continuing contact with both parents. Legal custody, by contrast, has previously been defined as "the right or authority of a parent or parents, to make decisions concerning the child's upbringing." (Internal citations omitted.)

On April 26, 2016, the parties stipulated judgment was reduced to writing.

Ms. Cox is a licensed clinical social worker who treated C.H. C.H. first saw Ms. Cox on June 1, 2016.

C.H. was released from inpatient treatment May 20, 2016.

Although we will not address each of Cynthia's assignments of error specifically, the opinion adequately discusses the finding that Kevin sustained his burden of proof in this matter. Therefore, we summarily pretermit discussion of several of Cynthia's assignments of error as they have no merit and do not warrant our consideration.

The factors listed in Article 134 include the following:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

A custody decree may be either a stipulated decree or considered decree. A stipulated custody decree is one where "the parties consent to a custodial arrangement, and no evidence of parental fitness is taken." In contrast, a considered custody decree is "an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children." Bonnette v. Bonnette, 2015-0239 (La. App. 4 Cir. 2/17/16), 185 So.3d 321, 329, writ denied, 2016-0663 (La. 5/20/16), 191 So.3d 1072 (citations omitted).

Cynthia argues on appeal that Dr. Taylor's recommendation is unreliable because he failed to interview C.H.'s sisters and Tamyra Bourgeois, the families treating therapist, while conducting his evaluation. The record shows that both Lindsey and Jessica Harrell, as well as Tamyra Bourgeois testified at trial. After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. Tuft v. Tuft , 51,293 (La. App. 2 Cir. 1/18/17), 2017 WL 4341309 *4. After looking at the record as a whole, we conclude that Dr. Taylor's evidence and testimony support a modification of custody. Therefore, the trial court did not abuse its discretion in accepting Dr. Taylor's recommendation.

Cynthia argues on appeal that she was denied due process and an adequate opportunity for discovery, particularly in deposing Dr. Taylor due to the signing of the trial court order on February 11, 2016. Cynthia further alleges that the court did not allow her an opportunity to cross-examine Dr. Taylor before the trial court adopted his evaluation. The right to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. Barker v. Barker, 2014-0775 (La. App. 1 Cir. 11/7/14), 167 So.3d 703, 705. The record reveals that the parties received Dr. Taylor's report on February 29, 2016, and discovery cut off was 30 days prior to trial, which was November 15, 2016, providing Cynthia ample time to cross-examine Dr. Taylor and obtain his testimony.